# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### June 18, 2013 Session

## STATE OF TENNESSEE v. JAMIE N. GRIMES

**Appeal from the Criminal Court for Davidson County**
**No. 2008-C-3179      Monte D. Watkins, Judge**

---

**No. M2012-00530-CCA-R3-CD      Filed October 22, 2013**

---

Following a jury trial, the Defendant, Jamie N. Grimes, was convicted of selling .5 grams or more of cocaine within 1,000 feet of an elementary school, a Class A felony. See Tenn. Code Ann. §§ 39-17-417, -432. The trial court classified the Defendant as a Range II, multiple offender, and sentenced him to twenty-five years. In this appeal as of right, the Defendant contends (1) that this offense should have been mandatorily joined with another offense for which he had previously been tried and convicted; (2) that his Sixth Amendment right to a speedy trial was violated; (3) that the indictment against him was defective because it failed to cite to the drug-free school zone statute; (4) that the State improperly withheld its "contract" with the confidential informant used in this case; (5) that the trial court erred by allowing the jury to view a transcript of an audio recording of the offense; (6) that the evidence was insufficient to sustain the conviction; and (7) that his sentence is void because the trial court checked the box for a release eligibility of thirty-five percent on the judgment form rather than the box for 100% of the minimum sentence as mandated by the drug-free school zone statute. Following our review, we affirm the Defendant's conviction and sentence. However, we remand the case to the trial court for correction of a clerical error regarding the Defendant's release eligibility.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed;
Case Remanded**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Mark Chapman (at trial and on appeal); and Dwight E. Scott (on appeal), Nashville, Tennessee, for the appellant, Jamie N. Grimes.

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Hugh T. Ammerman, III, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

FACTUAL BACKGROUND

Detective Justin Fox of the Metropolitan Nashville Police Department testified that on the afternoon of November 10, 2006, he conducted an undercover drug buy using a confidential informant. Det. Fox testified that he had used this particular confidential informant several times before, that she was "reliable," and that she was ultimately paid $200 for her participation in the drug buy. The confidential informant called the Defendant and arranged to buy two ounces of cocaine from him for $1,400. The Defendant called the confidential informant back a short time later and changed the location of their meeting.

Det. Fox testified that he searched the confidential informant and found no money or contraband on her. Det. Fox equipped the confidential informant with an audio recording device. Det. Fox also gave the confidential informant "buy" money, which had previously been photocopied, and a set of digital scales. Det. Fox testified that he saw the Defendant drive by in a black, 2003 F-150 pickup truck with a Tennessee Titans vanity plate. According to Det. Fox, the truck was registered to the Defendant. Det. Fox testified that he watched the confidential informant walk up to the truck and get in on the passenger side.

Det. Fox testified that once the confidential informant got into the truck, the Defendant drove away. The Defendant then parked a short distance away from where he had picked up the confidential informant. Det. Fox testified that he could see Fall-Hamilton Elementary School from where the Defendant had parked. At no point did Det. Fox or any of the other officers observing the transaction see anyone else approach or get into the Defendant's truck. Det. Fox testified that he only heard the Defendant and the confidential informant on the audio recording of the drug buy.

At trial, the audio recording of the drug buy was played for the jury. On the recording, the confidential informant could be heard having a phone conversation with the Defendant as she approached his truck. The Defendant was worried that the confidential informant was working for the police. Once inside the Defendant's truck, the confidential informant could be heard counting out the money. The Defendant and the confidential informant could also be heard discussing the price and weight of the cocaine. Det. Fox identified the Defendant's voice as being the man's voice heard on the recording.

-2-

Det. Fox testified that the confidential informant walked directly back to his car after she got out of the Defendant's truck. When she got into Det. Fox's car, the confidential informant had a bag of white powder and a bag of white rocks. All of the "buy" money that Det. Fox had previously given the confidential informant was gone. Both bags were eventually taken to the Tennessee Bureau of Investigation and tested. The white powder tested positive for cocaine and weighed 27.9 grams. The white rocks also tested positive for cocaine and weighed 25.7 grams.

David Kline of the Metropolitan Planning Department testified that the distance from where the Defendant parked his truck to Fall-Hamilton Elementary School was approximately 235 feet. Steven Keel, director of school security for the Metropolitan Nashville Public School System, testified that on the day of the drug buy, Fall-Hamilton was an operational elementary school. Based upon the foregoing, the jury convicted the Defendant of selling .5 grams or more of cocaine within 1,000 feet of an elementary school.

## ANALYSIS

### I. Mandatory Joinder

The Defendant contends that this offense should have been mandatorily joined with another offense for which he had previously been tried and convicted. The Defendant argues that his actions on November 10, 2006, were part of the same criminal episode as his possession with intent to sell 300 grams or more of cocaine on December 8, 2006. The State responds that the two offenses, which occurred almost a month apart and at different locations, were not part of the same criminal episode.

Prior to his trial for this offense, the Defendant was convicted of possession of 300 grams or more of cocaine with intent to sell for an offense that occurred on December 8, 2006. State v. Bobby Lee Robinson and Jamie Nathaniel Grimes, No. M2009-02450-CCA-R3-CD, 2011 WL 6747480 (Tenn. Crim. App. Dec. 22, 2011), perm. app. denied, (Tenn. May 17, 2012). On that day, the same confidential informant used in this case arranged to purchase cocaine from the Defendant and two co-defendants. Id. at *1-2. However, unlike this case, the officers arrested the Defendant and his co-defendants before the sale could take place. Id. at *2-3. The officers recovered approximately 160 grams of crack cocaine from the Defendant's truck. Id. at *3. The Defendant also consented to a search of his home where police discovered "a little over 300 grams" of cocaine. Id. at *3-4.

Tennessee Rule of Criminal Procedure 8 provides for two types of joinder of offenses: mandatory and permissive. Mandatory joinder is required when two or more offenses are "(A) based on the same conduct or arise from the same criminal episode; (B) within the

jurisdiction of a single court; and (C) known to the appropriate prosecuting official at the time of the return of the indictment(s) . . . ." Tenn. R. Crim. P. 8(a)(1). If the State fails to join all of the required offenses, it will be barred from subsequently prosecuting the uncharged offenses that should have been joined, unless the charges were severed. Tenn. R. Crim. P. 8(a)(2); Tenn. R. Crim. P. 8, Advisory Comm'n Cmt.

Rule 8(a) requires mandatory joinder of offenses that are "based on the same conduct or arise from the same criminal episode." "Same conduct" offenses involve "a single act that results in a number of interrelated offenses." State v. Johnson, 342 S.W.3d 468, 473 (Tenn. 2011). "Same criminal episode" or "single criminal episode" offenses "normally are generated by separate physical actions." Id. at 474 (quoting 2 ABA Standards for Criminal Justice § 13-1.2 cmt., at 13.10). However, the acts "must occur simultaneously or in close sequence and must occur in the same place or in closely situated places." Id. A gap in time between the acts "may be sufficient to interrupt the temporal proximity required for a single criminal episode to exist." Id. at 475.

In addition to the time and place requirements, another "critical characteristic of single episode offenses" is that "proof of one offense necessarily involves proof of the others." Johnson, 342 S.W.3d at 475 (quoting 2 ABA Standards for Criminal Justice § 13-1.2 cmt., at 13.10). Put another way, "proof of one offense must be inextricably connected with the proof of the other or [] the proof of one offense forms a substantial portion of the proof of the other offense." Id. (internal quotation marks and citations omitted). The offenses "need not be based solely on the same facts," but "a substantial interrelationship between the evidence required to prove each of [the] several offenses" is required. Id.

The charges against the Defendant arose from two separate acts; therefore, the offenses must have been part of the same criminal episode in order for Rule 8(a) to apply. While the same confidential informant was used in both cases, the offenses occurred almost a month apart and at different locations. Additionally, the offense at issue in this case was a completed sale of cocaine whereas the Defendant was stopped on December 8, 2006, before the sale could be completed. The cocaine at issue in the December 8, 2006 offense was discovered as a result of the search of the Defendant's truck and the consensual search of his home. There is no evidence that proof of one offense is inextricably connected with or forms a substantial portion of the proof of the other.

As such, we do not believe that the two offenses which occurred almost a month apart and at different locations were part of the same criminal episode even though the same confidential informant was used in both cases. See State v. Steve Edward Houston, No. 01C01-9711-CC-00510, 1998 WL 749414, at *2-4 (Tenn. Crim. App. Oct. 28, 1998) (concluding that separate drug sales using the same undercover informant did not require

mandatory joinder but could constitute evidence of a common scheme or plan for purposes of permissive joinder); State v. Dunning, 762 S.W.2d 142, 143-44 (Tenn. Crim. App. 1988) (concluding that the "separate acts of selling cocaine to different officers from two distinct law enforcement investigations on different days is not a single action but a series of independently motivated occurrences"). Accordingly, we conclude that this issue is without merit.[1]

## II. Speedy Trial

The Defendant contends that his Sixth Amendment right to a speedy trial was violated. The Defendant argues that almost two years elapsed from the date of the offense to entry of the indictment in this case. The Defendant further argues that during the delay he was incarcerated continuously. The State responds that the evidence in the record fails to establish a violation of the Defendant's Sixth Amendment right to a speedy trial.

Both the Sixth Amendment of the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee criminal defendants the right to a speedy and public trial. State v. Utley, 956 S.W.2d 489, 492 (Tenn. 1997). However, the right to a speedy trial is only triggered after "either a formal indictment or information or [] the actual restraint imposed by arrest and holding to answer [for] a criminal charge." Id. (quoting United States v. Marion, 404 U.S. 307, 320 (1971)). Arrest on one charge does not trigger the right to a speedy trial with respect to another charge filed after the arrest. United States v. Matlock, 558 F.2d 1328, 1329-30 (8th Cir. 1977); accord United States v. Stead, 745 F.2d 1170, 1172-73 (8th Cir. 1984). The Defendant's arrest on December 8, 2006, was for the offenses he committed on that date and not for the November 10, 2006 offense at issue here. As such, the Defendant's right to a speedy trial was not implicated in this case until he was indicted on September 23, 2008. Instead, the Defendant appears to argue that his right to due process was violated by the pre-indictment delay in this case.[2]

It is well established that "delay between the commission of an offense and the commencement of adversarial proceedings does not violate an accused's constitutional right to a speedy trial, but an unreasonable delay between the commission of the offense and the commencement of the prosecution may violate the constitutional right to due process." State

---

[1]In his brief, the Defendant contends that he was also indicted for two more offenses of selling cocaine which occurred between November 10, 2006 and December 8, 2006. However, the State went to trial only on the November 10 and December 8, 2006 offenses. Therefore, we will make no determination on this issue regarding the unresolved offenses.

[2]The Defendant made no argument in the trial court or in his brief to this court that the delay between his September 23, 2008 indictment and February 14, 2011 trial violated his right to a speedy trial.

v. Carico, 968 S.W.2d 280, 284 (Tenn. 1998) (quoting State v. Gray, 917 S.W.2d 668, 671 (Tenn. 1996)) (internal quotation marks omitted).  When the State is aware that a criminal offense has been committed, the defendant must establish the following to show that the delay between the commission of the offense and the indictment violated his right to due process: (1) that there was a delay; (2) that the defendant sustained actual prejudice as a direct and proximate cause of the delay; and (3) that the State caused the delay in order to gain a tactical advantage over the Defendant.  Utley, 956 S.W.2d at 495.

Here, there was a delay of almost two years between the offense and the filing of the indictment.  Prior to trial, the State explained that the delay was inadvert.  According to the State, Det. Fox had been informed by a different prosecutor that the case would be presented to the grand jury, but that prosecutor failed to do so.  When Det. Fox brought this to the attention of the assistant district attorney general who had prosecuted the Defendant for the December 8, 2006 offense, the case was presented to the grand jury.  The Defendant has not presented any evidence to contradict the State's explanation for the delay; therefore, the Defendant has failed to establish that the State caused the delay in order to gain a tactical advantage.  Furthermore, the Defendant has failed to show that he was prejudiced by the delay.  The Defendant claims in his brief that he "lost the opportunity to locate two witnesses necessary for his defense and to gather evidence in support of his defense" due to the delay.  However, the Defendant presented no evidence to establish who these witnesses were or what their testimony would have been.  Accordingly, we conclude that this issue is without merit.

### III. Indictment

The Defendant contends that the indictment against him was defective because it failed to cite to the drug-free school zone statute or name the school at issue.  The Defendant argues that the indictment did not include a sufficient description of the offense; therefore, it was insufficient to provide him notice of the charged offense.  The State responds that the wording of the indictment which stated that the offense occurred "on the grounds or facilities of any school or within one thousand (1000) feet of the real property" of a school was sufficient to give the Defendant notice of the charged offense.

This court has previously held that failure to reference the drug-free school zone statute does not render an indictment invalid.  State v. Frederick Edward Braxton, No. M2010-01998-CCA-R3-CD, 2011 WL 5573357, at *4 (Tenn. Crim. App. Nov. 15, 2011), perm. app. denied, (Tenn. Apr. 12, 2012); Randall Edwin Cobb v. State, No. W2004-00156-CCA-R3-HC, 2005 WL 396379, at *2 (Tenn. Crim. App. Feb. 14, 2005), perm. app. denied, (Tenn. Aug. 22, 2005).  "So long as the offense is adequately described in the indictment . . . it is sufficient even if it fails to allege the code section allegedly violated."  Braxton, 2011

WL 5573357, at *4 (citing <u>Malone v. State</u>, 101 S.W.2d 541, 543 (Tenn. Crim. App. 1985)). Here, the indictment stated that the offense occurred within 1,000 feet of a school. This was sufficient to provide the Defendant notice of the charged offense. With respect to the Defendant's argument that failure to include the name of the school rendered the indictment invalid, we are aware of no authority supporting this contention and agree with the State that defendants can obtain this information during discovery or by seeking a bill of particulars. Accordingly, we conclude that this issue is devoid of merit.

## *IV. Disclosure of State's "Contract" with Confidential Informant*

In his brief, the Defendant argues that the State failed to "disclose the extent of the confidential informant contract and involvement" prior to his trial for the December 8, 2006 offense. The Defendant contends that any "information gathered through [the] use of [the confidential] informant should have been suppressed." However, the Defendant admits that the State disclosed to him how much the confidential informant was paid with respect to the November 10, 2006 offense prior to his trial. Furthermore, Det. Fox testified at trial about the amount the confidential informant was paid and was cross-examined by the Defendant about this issue. Accordingly, we conclude that this issue has no merit.

## *V. Audio Recording and Transcript*

The Defendant contends that the trial court erred by allowing the jury to view a transcript of an audio recording of the offense. The Defendant argues that the transcript was "contrived" and not representative of what was on the audio recording. The State responds that the transcript was not entered into evidence, that the jury was instructed that the audio recording and not the transcript was the evidence, and that the Defendant failed "to identify any portion of the transcript which could be construed as misleading or deceptive."

"It is well-settled in Tennessee that a transcript of a tape may be given to a jury where the jury is instructed that the tape, and not the transcript is the actual evidence." <u>State v. Barnard</u>, 899 S.W.2d 617, 623-24 (Tenn. Crim. App. 1994). Here, the transcript was not entered into evidence and merely served as a listening aid for the jury. More importantly, the trial court instructed the jury that "the evidence [was] the recording itself, not the transcript" prior to publishing the transcript to the jury. Furthermore, the Defendant has failed to include a copy of the transcript in the appellate record for our review; therefore, he has failed to present any proof that the transcript was in any way inaccurate. Accordingly, we conclude that this issue is without merit.

## VI. Sufficiency of the Evidence

The Defendant contends that the evidence was insufficient to sustain his conviction. The Defendant's main argument is that the evidence was insufficient in light of the fact that Det. Fox's report listed a complaint number that was different from all of the other documents regarding this offense. The State responds that the evidence was sufficient to sustain the conviction.

An appellate court's standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). This court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

A guilty verdict "removes the presumption of innocence and replaces it with a presumption of guilt, and [on appeal] the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Bland, 958 S.W.2d at 659; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). A guilty verdict "may not be based solely upon conjecture, guess, speculation, or a mere possibility." State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). However, "[t]here is no requirement that the State's proof be uncontroverted or perfect." State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Put another way, the State is not burdened with "an affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt." Jackson, 443 U.S. at 326. To that end, circumstantial evidence is as probative as direct evidence. State v. Dorantes, 331 S.W.3d 370, 379-81 (Tenn. 2011).

It is an offense for a defendant to knowingly manufacture, deliver, sell, or possess with the intent to manufacture, deliver, or sell cocaine. Tenn. Code Ann. § 39-17-417(a). It is a Class B felony to commit any of these acts when the amount of the cocaine is .5 grams or more. Tenn. Code Ann. § 39-17-417(c)(1). A violation of Tennessee Code Annotated section 39-17-417 that occurs within 1,000 feet of an elementary school "shall be punished one (1) classification higher than is provided in [section] 39-17-417[(c)] for such violation." Tenn. Code Ann. § 39-17-432(b)(1).

Here, Det. Fox testified that he was with the confidential informant when she called the Defendant to arrange to buy $1,400 worth of cocaine. Det. Fox testified that a short time later he saw the Defendant drive to the agreed upon meeting place in a black F-150 pickup truck with a license plate that was registered to the Defendant. Det. Fox watched the confidential informant enter the truck. An audio recording of the transaction was played for the jury in which a man, identified as the Defendant's voice by Det. Fox, is heard discussing the weight and price of the cocaine with the confidential informant. The confidential informant could also be heard counting out the money. Det. Fox testified that the confidential informant walked straight back to his car after she got out of the Defendant's truck. The confidential informant had two bags of what appeared to be cocaine when she returned to Det. Fox's car. The contents of the bags were later tested, confirmed to be cocaine, and in total weighed approximately 53 grams. All this took place approximately 235 feet from Fall-Hamilton Elementary School.

With respect to the Defendant's argument regarding the different complaint numbers, Det. Fox testified at trial that he made a clerical mistake on his report and wrote down a complaint number associated with his investigation of the Defendant in another case rather than the correct complaint number for this case. Det. Fox further testified that all of the other documents and evidence regarding this case had the correct complaint number on them. When asked by defense counsel if he had gotten "the contraband" for this case "mixed up" with the other case, Det. Fox respond that "[t]he contraband didn't get mixed up." It was the province of the jury to weigh this evidence and the possibility that "the contraband got mixed up." The jury ultimately rejected the Defendant's argument, and we cannot revisit that decision on appeal. Accordingly, we conclude that the evidence was sufficient to sustain the Defendant's conviction.

*VII. Waived Arguments*

The Defendant raised the following additional arguments in his brief which were waived for various procedural defects:

The Defendant argues that the State "attempted . . . to amend the indictment to cure" defects therein regarding the date of the offense. However, the Defendant has failed to provide any citations to the record or to legal authority to support this argument and makes no argument with respect to this issue beyond a conclusory sentence that this raised a "possible" double jeopardy violation. As such, the Defendant has waived review of the issue in this court. See Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court.").

The Defendant argues that the trial court erred "by not allowing proof of conflicting complaint numbers on police reports." However, the Defendant has failed to provide any citations to legal authority to support this argument. As such, the Defendant has waived review of the issue in this court. See Tenn. Ct. Crim. App. R. 10(b). Furthermore, Det. Fox testified about the two complaint numbers at trial and was cross-examined extensively by the Defendant about the possibility that "the contraband got mixed up."

The Defendant argues that the trial court erred by not instructing the jury that simple possession or causal exchange was a lesser-included offense of the indicted offense. However, the Defendant has failed to provide any citations to legal authority to support this argument. As such, the Defendant has waived review of the issue in this court. See Tenn. Ct. Crim. App. R. 10(b).

The Defendant argues that photographs of the area where the offense took place and measurements estimating the distance to Fall-Hamilton Elementary School should have been excluded because they were taken a few days before trial. However, the Defendant has failed to provide any citations to legal authority to support this argument. As such, the Defendant has waived review of the issue in this court. See Tenn. Ct. Crim. App. R. 10(b). Furthermore, the Defendant cross-examined the witnesses about when the pictures and measurements were taken, giving the jury the opportunity to consider this issue when it was weighing the evidence.

The Defendant argues that he was not provide a "cultivated" property form. It was established at trial that the property form given to the Defendant during discovery was the copy Det. Fox kept for himself, and not the property form used by the evidence custodian which contained subsequent entries. However, the Defendant has failed to provide any citations to legal authority to support this argument. As such, the Defendant has waived review of the issue in this court. See Tenn. Ct. Crim. App. R. 10(b).

The Defendant argues that the trial court erred by allowing a witness to testify who was not listed on the indictment. However, the Defendant failed to raise a contemporaneous objection to the witness's testimony. See Tenn. R. App. P. 36(a) (stating that "[n]othing in this rule shall be construed as requiring relief to be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error"). Likewise, the Defendant failed to raise this issue in his motion for new trial. See Tenn. R. App. P. 3(e) (stating that "no issue presented for review shall be predicated upon . . . [a] ground upon which a new trial is sought, unless the same was specifically stated in a motion for new trial"). As such, the Defendant has waived review of the issue in this court.

Finally, the Defendant argues that the State failed to provide him with "timely discovery." However, the Defendant makes no citations to legal authority to support this contention and no argument with respect to this issue. As such, the Defendant has waived review of the issue in this court. See Tenn. Ct. Crim. App. R. 10(b).

*VIII. Release Eligibility*

The Defendant contends that his sentence is void because the trial court marked that he had a release eligibility of thirty-five percent on the judgment form but also stated on the judgment form that he had a mandatory minimum sentence length of twenty-five years pursuant to the drug-free school zone statute. The State responds that the Defendant's sentence is not void but concedes that the case should be remanded for correction of the judgment to reflect that the Defendant must serve 100% of his sentence.

The drug-free school zone statute provides that a defendant convicted of a violation of Tennessee Code Annotated section 39-17-417 within 1,000 feet of a school "be required to serve at least the minimum sentence for the defendant's appropriate range of sentence." Tenn. Code Ann. § 39-17-432(c). As a Range II, multiple offender, convicted of a Class A felony, the minimum sentence the Defendant could have received was twenty-five years. Tennessee Code Annotated section 39-17-432(c) mandates that the Defendant serve 100% of that sentence.

On the judgment form, the trial court noted that the Defendant had a mandatory minimum sentence length of twenty-five years pursuant to the drug-free school zone statute. However, under the release eligibility section of the judgment form, the trial court checked the box for a thirty-five percent release eligibility rather than the box marked "Drug Free Zone." The Defendant has failed to include a transcript of the sentencing hearing in the appellate record. However, it appears from the judgment form that this is a mere clerical error. Clerical errors do not void a judgment, and the trial court may correct such clerical errors at any time after such notice as the trial court sees fit. Cobb, 2005 WL 396379, at *2-3 (addressing a similar situation where the trial court checked both the "Drug Free Zone" box and a lesser release eligibility). Accordingly, we conclude that the Defendant's sentence is not void, but we remand the case to the trial court for entry of a corrected judgment addressing the clerical error and properly listing the Defendant as a drug-free school zone offender.

-11-

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, we affirm the Defendant's conviction and sentence. However, we remand the case to the trial court for correction of a clerical error regarding the Defendant's release eligibility.

_____

D. KELLY THOMAS, JR., JUDGE