IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
October 29, 2014 Session

## STATE OF TENNESSEE v. RONALD CHERY, DARYN W. CHERY, AND JOHN K. ST. CLOUD

**Appeal from the Circuit Court for Williamson County**
**Nos. II-CR086679-A; II-CR086679-B; II-CR086679-C   James G. Martin, III, Judge**

_____

**Nos. M2013-02845-CCA-R3-CD; M2014-00042-CCA-R3-CD;**
**M2014-00062-CCA-R3-CD - Filed March 4, 2015**

_____

Appellants Ronald Chery, Daryn W. Chery, and John K. St. Cloud were charged in a presentment with thirteen counts of aggravated burglary, thirteen counts of varying degrees of theft, and one count of conspiracy to commit theft of property valued at more than $60,000. Appellants filed a motion to dismiss the presentment on the grounds that they had been previously charged with one count of aggravated burglary and evading arrest that were so closely related to the subsequent thirteen burglaries and thefts that joinder of the offenses was mandatory. Following a hearing on the motion to dismiss, the trial court denied relief. Each appellant pleaded guilty to five counts of aggravated burglary, and the State dismissed all theft counts and the conspiracy count. As part of the plea agreement, appellants reserved a certified question pertaining to the necessity of mandatory joinder of the subsequent thirteen burglaries with the first burglary and related offenses pursuant to Rule 8(a) of the Tennessee Rules of Criminal Procedure. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT H. MONTGOMERY, JR., JJ., joined.

Matthew J. Crigger, Franklin, Tennessee, for the appellant, Ronald Chery.

Benjamin C. Signer, Franklin, Tennessee, for the appellant, Daryn W. Chery.

Shane K. McNeill, Thompson's Station, Tennessee, for the appellant, John K. St. Cloud.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Kim R. Helper, District Attorney General; and Terry E. Wood, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case involves a series of aggravated burglaries committed in the Franklin and Brentwood areas of Williamson County, Tennessee, during the summer of 2009.

## I. Procedural History

In prior criminal proceedings involving a July 12, 2010 presentment, appellant St. Cloud was charged with aggravated burglary, and as a result of the ensuing attempted stop of his vehicle, appellant R. Chery was charged with evading arrest while operating a motor vehicle, and appellants D. Chery and St. Cloud were charged with evading arrest. Each appellant pleaded guilty as charged between August and November, 2010. Appellant D. Chery was sentenced to eleven months, twenty-nine days in the county jail; appellant R. Chery was sentenced to four years in the Tennessee Department of Correction; and appellant St. Cloud was sentenced to three years in the Tennessee Department of Correction for aggravated burglary and eleven months, twenty-nine days in the county jail for evading arrest.

Subsequently, in an August 13, 2012 presentment, all appellants were jointly charged with thirteen counts of aggravated burglary, thirteen counts of theft of varying degrees, and one count of conspiracy to commit theft of property valued at more than $60,000. On September 4, 2013, counsel for appellant R. Chery filed a motion to dismiss the presentment for failure to join the offenses with those involved in the 2010 presentment. As the basis for the motion, appellant R. Chery argued that he had been previously prosecuted for a July 18, 2009 burglary and/or related counts of evading arrest that were part of the same series of 2009 burglaries. Because he had pleaded guilty and resolved the charges that arose from the 2010 presentment, R. Chery asserted that the State's failure to join the offenses involved in the 2012 presentment with the 2010 presentment should result in dismissal of the 2012 charges. Appellants D. Chery and St. Cloud, who were both charged with and pleaded guilty to offenses in connection with the 2010 presentment, joined appellant R. Chery's motion.

The trial court held a hearing on appellants' motion and denied relief. Thereupon, appellants entered guilty pleas to various counts of the presentment. The following chart illustrates the victims of each set of offenses, the grade of theft, and the disposition of each count of the presentment ("theft of property" is abbreviated as "TOP"):

| Count #: | Offense: | Victim(s): | Offense Date: | Disposition: |
|---|---|---|---|---|
| 1 & 2 | Aggravated Burglary TOP $10-$60,000 | Timothy & Michelle Roberson | 7/7/09 | D. Chery 5 yrs susp. |
| 3 & 4 | Aggravated Burglary TOP $10-$60,000 | Jeff & Amy Seiters | 7/8/09 | D. Chery 5 yrs susp. |
| 5 & 6 | Aggravated Burglary TOP $10-$60,000 | Lorann Adams | 7/9/09 | R. Chery 5 yrs susp. |
| 7 & 8 | Aggravated Burglary TOP $1000-$10,000 | John Murphy | 7/10/09 | J. St. Cloud 5 yrs susp. |
| 9 & 10 | Aggravated Burglary TOP over $60,000 | James & Patricia Hamm | 7/15/09 | J. St. Cloud 5 yrs susp. |
| 11 & 12 | Aggravated Burglary TOP $10-$60,000 | Tim & James Martin | 8/12/09 | R. Chery 5 yrs susp. |
| 13 & 14 | Aggravated Burglary TOP $1000-$10,000 | Tony Boykin | 8/13/09 | D. Chery 5 yrs susp. |
| 15 & 16 | Aggravated Burglary TOP $1000-$10,000 | William & Debbie Doute | 8/13/09 | J. St. Cloud 5 yrs susp. |
| 17 & 18 | Aggravated Burglary TOP $1000-$10,000 | Harry & Janice Nichols | 8/14/09 | D. Chery 5 yrs susp. |
| 19 & 20 | Aggravated Burglary TOP $10-$60,000 | Fount & Ida Smothers | 8/18/09 | D. Chery 5 yrs susp. |
| 21 & 22 | Aggravated Burglary TOP $500-$1000 | Raymond Tanner | 8/18/09 | R. Chery 5 yrs susp. |
| 23 & 24 | Aggravated Burglary TOP $10-$60,000 | Roland & Candice Hart | 8/19/09 | R. Chery 5 yrs susp. J. St. Cloud 5 yrs susp. |
| 25 & 26 | Aggravated Burglary TOP $10-$60,000 | Kim Morgan | 8/20/09 | R. Chery 5 yrs susp. J. St. Cloud 5 yrs susp. |

| 27 | Conspiracy | | | Dismissed |
|---|---|---|---|---|

Each appellant pleaded guilty to the designated aggravated burglary counts, and the State dismissed the corresponding theft counts. Restitution was provided for the victims in the plea agreement to the burglaries. As part of the plea agreement, appellants reserved a certified question:

> [W]hether the trial court erred in denying [appellants'] motion to dismiss the indictment, pursuant to the mandatory joinder requirements of Rule 8(a) of the Tennessee Rules of Criminal Procedure, for failure to join the offenses in the indictment, case number II-CR086679, with the charges in the prior indictment in case number II-CR075074, where it was argued that the offenses arise from the same criminal episode, are within the jurisdiction of a single court, and were known to the appropriate prosecuting official at the time of the return of the indictment in case number II-CR075074.

## II. Facts from Motion Hearing

At the hearing on appellants' motion to dismiss, the State stipulated that the appropriate prosecuting official had knowledge of the offenses in the instant case when the 2010 presentment was obtained. The defense,[1] through counsel for appellant R. Chery, then called Detective Chad Black with the Franklin Police Department as its first witness. He testified that he investigated the burglary of the Hamm residence in Franklin in July 2009. Officers from the Brentwood Police Department also responded to the scene because the mode of entry – kicking in the front door – was similar to some burglaries that they were investigating. Other similarities between the Hamm burglary and the Brentwood burglaries were that pillow cases were taken from the homes to carry the stolen items, that the burglaries all occurred during the middle of the day, and that electronics, jewelry, and guns were stolen in each case.

Detective Black testified that a suspect vehicle, a minivan bearing North Carolina license plates, had been identified as being possibly involved in the home invasion burglaries. On August 20, 2009, Brentwood police officers identified a vehicle matching that description in Franklin. On that same date, Detective Black received a telephone call from a "concerned citizen" who provided information about the suspects' identities. This anonymous female caller named each appellant and indicated that the three of them operated together. Detective

---

[1] Because all three appellants joined in the motion to dismiss, we will refer to them collectively as "the defense."

Black received a potential address for one of the suspects in Nashville. After they were arrested, a search warrant was executed at the address, and evidence pertaining to the Hamm burglary as well as other burglaries from Brentwood, Nashville, and Franklin was discovered. On cross-examination, Detective Black verified that after apprehension of appellants, no further such burglaries occurred.

On direct examination by counsel for appellant D. Chery, Detective Black acknowledged having attended a joint intelligence briefing between the Franklin and Brentwood Police Departments. The purpose of the meeting was to share information about the string of burglaries.

Counsel for appellant St. Cloud also questioned Detective Black. Detective Black confirmed that when he wrote his investigative summary, he included information pertaining to the entire investigation of all of the burglaries. Based upon the information he received, he concluded that the same group of individuals was responsible for all of the burglaries.

The defense, through counsel for appellant D. Chery, next called retired Detective William Ambrose as a witness. Detective Ambrose testified that during the summer of 2009, he participated in the investigation of a series of burglaries in Brentwood. Specifically, he investigated the Roberson, Martin, and Rusnak[2] burglaries. All of the doors to the residences had been kicked in using the same "mule kick" method, which left an imprint of an upside-down shoe. Pillowcases had also been removed from the beds, and jewelry, guns, and electronics were taken from the homes. The burglaries occurred between 9:00 and 11:00 a.m. and 12:30 to 4:30 p.m. During the course of the investigation, law enforcement officers concluded that the burglaries were being committed by the same individuals. A pivotal point in the investigation occurred when a credit card was taken from the Rusnak residence and was used at a Wendy's restaurant in Nashville. Surveillance tapes from Wendy's showed the vehicle whose occupant used the credit card. According to the footage, the vehicle was a green minivan with North Carolina license plates. Later that night, the credit card was used at a Kroger grocery store, and video cameras captured images of the individuals involved – a black male later identified as appellant St. Cloud and two white females. Subsequently, the police department received a telephone call from a concerned citizen who provided additional information.

Detective Ambrose stated that he was involved in executing the search warrant at the residence of appellant St. Cloud, where his cousins D. Chery and R. Chery also resided.

---

[2] Joseph Rusnak was the victim of an August 18, 2009 aggravated burglary that was prosecuted separately by the July 2010 presentment. Although his name is spelled differently throughout the transcript, we will defer to the spelling contained in the presentment as per the policy of this court.

Detective Ambrose was shown a timeline and stated that he agreed with the dates corresponding to the Murphy, Martin, Boykin, and Rusnak burglaries. He was not familiar with the Smothers and Tanner burglaries. He further said that appellants were arrested on August 21, 2009. Their vehicle was being followed throughout the day, and officers attempted to execute a traffic stop. However, the vehicle fled, and officers gave chase. When the vehicle came to a stop, appellant R. Chery was in the driver's seat, and the other appellants exited the vehicle and continued to flee on foot.

On cross-examination, Detective Ambrose clarified that there were eight residential burglaries and one attempted burglary in Brentwood in this series of crimes. He personally investigated two of the burglaries and the attempt.

The defense then called Detective Alan Keller with the Brentwood Police Department, who assisted in several of the investigations. He stated that he was never assigned any of the cases and was not privy to all of the facts of any particular case. He said that officers first made the connection among the burglaries when they noticed the similarities between a Wilson Pike burglary and other burglaries. Detective Keller explained that at the intelligence meeting, they included in the discussion all of the burglaries that shared the same *modus operandi*.

Detective Keller stated that officers organized surveillance on the suspect vehicle. When they attempted to stop the van, the driver "disregarded [his] attempt to stop [the van]" and drove around him. Detective Keller pursued the van until it crashed through a fence and onto vacant property. The van came to rest "back in the woods." The driver, appellant R. Chery, was arrested by Detective Keller, and the two other black male occupants fled on foot. Inside the vehicle, Detective Keller observed a flat screen television, a long gun, jewelry, and pillow cases. These items were related to the Rusnak burglary as well as burglaries that occurred in Davidson County.

Detective Keller confirmed that he was involved in execution of the search warrant at appellants' residence. There, officers discovered more property from other burglaries that had occurred.

The defense's next witness was Detective David Beard with the Williamson County Sheriff's Office. During the summer of 2009, he investigated a series of home burglaries involving the Doute, Nichols, Smothers, and Morgan residences. He outlined the "common denominators" of the burglaries as: the homes were unattended; the offenses occurred during daylight hours; the doors were forcibly kicked to gain entry; the focus of the thefts was jewelry and cash; pillow cases were taken to carry the stolen property; and the suspects ransacked the homes.

Detective Beard participated in the execution of the search warrant at appellants' residence. Several items of stolen property from different burglaries were recovered. Detective Beard recalled having testified before the grand jury and the State's having obtained presentments charging appellants with burglary and theft.

The defense entered into evidence court documents from the prior convictions associated with these offenses.

## III. Analysis

### A. Certified Questions

Rule 3(b)(2) of the Tennessee Rules of Appellate Procedure permits a defendant to plead guilty while reserving the right to appeal a certified question of law that is dispositive of the case. In doing so, a defendant must also comply with the requirements of Rule 37(b)(2)(A) of the Tennessee Rules of Criminal Procedure. Rule 37 outlines the following requirements:

>  (i)    the judgment of conviction or order reserving the certified question that is filed before the notice of appeal is filed contains a statement of the certified question of law that the defendant reserved for appellate review;

>  (ii)   the question of law as stated in the judgment or order reserving the certified question identifies clearly the scope and limits of the legal issue reserved;

>  (iii)  the judgment or order reserving the certified question reflects that the certified question was expressly reserved with the consent of the state and the trial court; and

>  (iv)   the judgment or order reserving the certified question reflects that the defendant, the state, and the trial court are of the opinion that the certified question is dispositive of the case.

Tenn. R. Crim. P. 37(b)(2)(A)(i)-(iv).

Our courts have explicitly defined the prerequisites to an appellate court's consideration of the merits of a question of law certified pursuant to Rule 37(b)(2):

Regardless of what has appeared in prior petitions, orders, colloquy in open court or otherwise, the final order or judgment from which the time begins to run to pursue a [Tennessee Rule of Appellate Procedure] 3 appeal must contain a statement of the dispositive certified question of law reserved by defendant for appellate review and the question of law must be stated so as to clearly identify the scope and the limits of the legal issue reserved. For example, where questions of law involve the validity of searches and the admissibility of statements and confessions, etc., the reasons relied upon by defendant in the trial court at the suppression hearing must be identified in the statement of the certified question of law and review by the appellate courts will be limited to those passed upon by the trial judge and stated in the certified question, absent a constitutional requirement otherwise. Without an explicit statement of the certified question, neither the defendant, the State nor the trial judge can make a meaningful determination of whether the issue sought to be reviewed is dispositive of the case. Most of the reported and unreported cases seeking the limited appellate review pursuant to [Tennessee Rule of Criminal Procedure] 37 have been dismissed because the certified question was not dispositive. Also, the order must state that the certified question was expressly reserved as part of a plea agreement, that the State and the trial judge consented to the reservation and that the State and the trial judge are of the opinion that the question is dispositive of the case. Of course, the burden is on defendant to see that these prerequisites are in the final order and that the record brought to the appellate courts contains all of the proceedings below that bear upon whether the certified question of law is dispositive and the merits of the question certified. No issue beyond the scope of the certified question will be considered.

*State v. Bowery*, 189 S.W.3d 240, 245 (Tenn. Crim. App. 2004) (internal quotation marks omitted) (quoting *State v. Preston*, 759 S.W.2d 647, 650 (Tenn. 1988)). The *Preston* requirements are mandatory. *Bowery*, 189 S.W.3d at 245-46 (citing *State v. Pendergrass*, 937 S.W.2d 834, 837 (Tenn. 1996)). Failure to comply with the requirements results in dismissal of the appeal. *Id.* (citing *Pendergrass*, 937 S.W.2d at 837). Our supreme court has clearly required strict compliance with *Preston*:

[O]ur prior decisions demonstrate that we have never applied a substantial compliance standard to the *Preston* requirements as urged by the defendant in this case. To the contrary, we have described the requirements in *Preston* for appealing a certified question of law under Rule 37 of the Tennessee Rules of Criminal Procedure as "explicit and unambiguous." Moreover, we agree with the State that a substantial compliance standard would be very difficult to

apply in a consistent and uniform manner, and therefore would conflict with the very purpose of *Preston*. We therefore reject the defendant's argument that substantial compliance with the requirements set forth in *Preston* is all that is necessary in order to appeal a certified question of law.

*State v. Armstrong*, 126 S.W.3d 908, 912 (Tenn. 2003) (citations omitted).

One requirement of a properly certified question is that "'the defendant, the state, and the trial court are of the opinion that the certified question of law is dispositive of the case.'" *State v. Dailey*, 235 S.W.3d 131, 134 (Tenn. 2007) (quoting Tenn. R. Crim. P. 37(b)(2) (A)(iv)). The question is dispositive "when the appellate court 'must either affirm the judgment [of conviction] or reverse and dismiss [the charges].'" *Dailey*, 235 S.W.3d at 134 (alteration in original) (quoting *State v. Walton*, 41 S.W.3d 75, 96 (Tenn. 2001)). An issue is never dispositive when this court may exercise the option to reverse and remand. *State v. Wilkes*, 684 S.W.2d 663, 667 (Tenn. Crim. App. 1984). This court "'is not bound by the determination and agreement of the trial court, a defendant, and the State that a certified question of law is dispositive of the case.'" *Dailey*, 235 S.W.3d at 134-35 (quoting *State v. Thompson*, 131 S.W.3d 923, 925 (Tenn. Crim. App. 2003)). The appellate court must make an independent determination that the certified question is dispositive. *Id.* at 135 (citing *Preston*, 759 S.W.2d at 651). Thus, the issue becomes whether "*the record on appeal* demonstrates how [the certified] question is dispositive of the case." *Id.* (citing *Preston*, 759 S.W.2d at 651) (emphasis in original). Reviewing these questions under the stringent standards of *Preston*, we conclude that the following certified question is dispositive of the case:

> [W]hether the trial court erred in denying [appellants'] motion to dismiss the indictment, pursuant to the mandatory joinder requirements of Rule 8(a) of the Tennessee Rules of Criminal Procedure, for failure to join the offenses in the indictment, case number II-CR086679, with the charges in the prior indictment in case number II-CR075074, where it was argued that the offenses arise from the same criminal episode, are within the jurisdiction of a single court, and were known to the appropriate prosecuting official at the time of the return of the indictment in case number II-CR075074.

## B. Mandatory versus Permissive Joinder

Appellants argue that the 2012 presentment should be dismissed because joinder of the 2010 and 2012 presentments was mandatory pursuant to Tennessee Rule of Criminal Procedure 8(a). The State counters that joinder of the presentments was permissive but not mandatory. "Issues regarding the construction and interpretation of rules of court, including

the Tennessee Rules of Criminal Procedure, involve questions of law." *State v. Johnson*, 342 S.W.3d 468, 471 (Tenn. 2011); *see Lacy v. Cox*, 152 S.W.3d 480, 483 (Tenn. 2004); *Green v. Moore*, 101 S.W.3d 415, 418 (Tenn. 2003). Accordingly, on appeal, we review the trial court's construction of the rules *de novo*. *Id.* (citing *State v. Ferrante*, 269 S.W.3d 908, 911 (Tenn. 2008)).

Mandatory joinder of offenses is governed by Tennessee Rule of Criminal Procedure 8(a)(1), which states:

> Two or more offenses shall be joined in the same indictment, presentment, or information, with each offense stated in a separate count, or the offenses consolidated pursuant to Rule 13, if the offenses are:
>
> (A)    based on the same conduct or arise from the same criminal episode;
>
> (B)    within the jurisdiction of a single court; and
>
> (C)    known to the appropriate prosecuting official at the time of the return of the indictment(s), presentment(s), or information(s).

In defining "same conduct" or "same criminal episode," our supreme court has adopted the definition set forth in the American Bar Association Standards for Criminal Justice § 13-1.2:

> "Single criminal episode" offenses normally are generated by separate physical actions. The actions may be committed by separate defendants. In other respects, however, they are similar to same conduct offenses: they occur simultaneously or in close sequence, and they occur in the same place or in closely situated places. A critical characteristic of single episode offenses, particularly in cases involving otherwise unrelated offenses or offenders, is the fact that proof of one offense necessarily involves proof of the others.

*Johnson*, 342 S.W.3d at 474. Moreover, to establish that "proof of one offense necessarily involves proof of the others," "one offense must be 'inextricably connected' with the proof of the other, . . . or . . . the proof of one offense forms a 'substantial portion of the proof' of the other offense." *Id.* at 475 (citing *United States v. Montes-Cardenas*, 746 F.2d 771, 776 (11th Cir. 1984); *State v. Shepherd*, 902 S.W.2d 895, 904 (Tenn. 1995)). Although the offenses involved in each case need not be based solely on the same facts, "requiring a substantial interrelationship between the evidence required to prove each of several offenses 'properly focuses the trial court's inquiry on the degree to which the defendant is harassed

and judicial resources wasted by successive prosecutions.'" *Id.* (quoting *People v. Rogers*, 742 P.2d 912, 919 (Colo. 1987) (*en banc*)).

In this case, the State concedes that the offenses were within the jurisdiction of a single court and that the appropriate prosecuting official had knowledge of all of the crimes. Therefore, the determinative factor is whether all of the offenses were based on the same conduct or were part of the same criminal episode. The defense, of course, argues that the offenses occurred sequentially and within a close proximity of each other. The State rebuts this position by arguing that there was a "significant break in the action" between the offenses constituting the first presentment and the second presentment because the burglaries spanned from July 7 to August 20, 2009.

We find the State's argument disingenuous. The Rusnak burglary occurred on the same date as the Tanner and Smothers burglaries, which was August 18, 2009. To include the Rusnak burglary in the 2010 presentment to the exclusion of the other two belies the State's position with regard to temporal proximity.

Likewise, its argument with respect to the spatial proximity is equally unavailing. All of the burglaries occurred within neighborhoods of Williamson County along the Interstate 65 corridor. The fact that they were not all next-door neighbors does not weigh in favor of the State when analyzing spatial proximity. Appellants clearly had a pattern of locating and burglarizing unoccupied homes during the daylight hours in the neighborhoods of Franklin, Brentwood, and Thompson's Station, all located within Williamson County. We conclude that the element of spatial proximity is satisfied here.

The remaining inquiry focuses on whether proof of one offense necessarily involves proof of the others, which instructs us to review whether "one offense [is] 'inextricably connected' with the proof of the other, . . . or . . . the proof of one offense forms a 'substantial portion of the proof' of the other offense." *Johnson*, 342 S.W.3d at 474-75. Appellants cite *State v. Shepherd,* 902 S.W.2d 895 (Tenn. 1995), in support of their position that joinder of both presentments was mandatory. In *Shepherd*, officers were investigating the defendant in connection with the murder of a female victim. *Id.* at 899. When officers visited the defendant's home to question him, he assaulted the officers with a twelve-gauge shotgun. *Id.* As such, the defendant was indicted for murder as well as aggravated assault of the police officers. *Id.* The trial court in *Shepherd* concluded that Tennessee Rule of Criminal Procedure 8(a) mandated joinder of all of the offenses because evidence of the aggravated assault would necessarily involve proof related to the murder charge. *Id.* at 903. The supreme court agreed, finding that the evidence of all of the offenses was "inextricably connected." *Id.* at 904.

We look first to the joining of the Rusnak burglary with the evading arrest charges in the 2010 presentment. Following the logic above, it stands to reason that the Rusnak burglary was "inextricably connected" to the charges of evading arrest. One of Rusnak's credit cards was stolen during the burglary, and appellants used it at two locations, which yielded video images of both appellant St. Cloud and his vehicle. This provided the link that led to the justified stop of appellant St. Cloud's vehicle, which resulted in a car chase and eventually two of the appellants fleeing on foot.

However, the "inextricable connection" is incongruent with the remaining thirteen burglaries addressed in the 2012 presentment. The stop of appellant St. Cloud's vehicle yielded proceeds from burglaries in *Davidson* County, not Williamson County, as noted in facts supporting the charge of conspiracy. While the Rusnak burglary was necessary to provide a link between the burglary investigation and the car chase that resulted in the evading arrest charges, the remainder of the burglaries were not so "inextricably connected" to the evading arrest charges that mandatory joinder was necessary. "Additionally, we note that the policy behind Tennessee Rule of Criminal Procedure 8(a) is to prevent multiple trials, and here, [appellants] did not choose to go to trial on [the first] indictment; therefore this policy has not been compromised in any way." *State v. David Lee Kestner*, No. M2004-02478-CCA-R3-CD, 2006 WL 359698, at *6 (Tenn. Crim. App. Feb. 10, 2006).

## CONCLUSION

Upon review of the briefs of the parties, the applicable case law, and the arguments of counsel, the judgments of the trial court are affirmed.

_____
ROGER A. PAGE, JUDGE

-12-