IN THE SUPREME COURT OF TENNESSEE
AT MEMPHIS
November 4, 2010 Session

## STATE OF TENNESSEE v. CEDRIC JOHNSON

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Shelby County**
**No. 08-00199      Chris Craft, Judge**

---

**No. W2008-01593-SC-R11-CD - Filed May 26, 2011**

---

This appeal involves the application of the mandatory joinder provisions in Tenn. R. Crim. P. 8(a)(1)(A). The defendant was charged with committing an aggravated robbery and was separately charged with initiating a false police report twelve hours later regarding his automobile that was somehow connected with the robbery. Approximately one month after he was indicted by a Shelby County grand jury for initiating a false police report, the defendant pleaded guilty to attempting to initiate a false police report. Thereafter, a Shelby County grand jury indicted the defendant for aggravated robbery. The defendant filed a motion in the Criminal Court for Shelby County seeking to dismiss the aggravated robbery indictment in accordance with Tenn. R. Crim. P. 8(a)(2) because the State had already prosecuted him separately on the initiation of a false police report charge. The trial court granted the defendant's motion, and the State appealed to the Court of Criminal Appeals. A divided panel of the Court of Criminal Appeals affirmed the trial court's judgment. *State v. Johnson*, No. W2008-01593-CCA-R3-CD, 2009 WL 4263653 (Tenn. Crim. App. Nov. 30, 2009). We granted the State's application for permission to appeal to address the application of Tenn. R. Crim. P. 8(a)(1)(A) to offenses arising from the same criminal episode. We have determined that the two offenses involved in this case were not part of the same criminal episode and, therefore, that the Court of Criminal Appeals erred by relying on Tenn. R. Crim P. 8(a)(2) to dismiss the aggravated robbery charge.

### Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals Reversed

WILLIAM C. KOCH, JR., J., delivered the opinion of the Court, in which CORNELIA A. CLARK, C.J., JANICE M. HOLDER, GARY R. WADE, and SHARON G. LEE, JJ., joined.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; Lacy Wilber, Assistant Attorney General; William L. Gibbons, District Attorney General; and Nicole Germain, Assistant District Attorney General, for the appellant, State of Tennessee.

Claiborne H. Ferguson, Memphis, Tennessee, for the appellee, Cedric Johnson.

**OPINION**

**I.**

On April 4, 2007, Di'A Watkins was robbed by two men while he was walking near the intersection of Midland Avenue and Buntyn Street in Memphis. The two men, brandishing a firearm, demanded Mr. Watkins's shoes, cellular phone, and cash. After Mr. Watkins complied with their demands, his assailants struck him in the head and kicked him to the ground.

The following day, the Memphis Police Department received a telephone call from Cedric Johnson reporting that his 1999 Chevrolet Cavalier had been stolen. The officer who was dispatched to Mr. Johnson's residence interviewed Mr. Johnson in the presence of Mr. Johnson's mother. Mr. Johnson first told the officer that his automobile had been stolen from his girlfriend's house during the previous evening. His mother did not believe what Mr. Johnson had told the officer and began questioning him herself. Mr. Johnson tried several more times to convince his mother and the officer that his automobile had been stolen. Eventually, he conceded that he had loaned his automobile to a friend and that his friend had called to tell him that there was a problem with the automobile and to suggest that he report that the automobile had been stolen.

At this point, the officer suspected Mr. Johnson's automobile could have been used in a robbery. Because Mr. Johnson had admitted to lying about the theft of his automobile, the officer arrested him for initiating a false police report.[1]

On April 6, 2007, Mr. Watkins viewed a photographic lineup that included a picture of Mr. Johnson. After Mr. Watkins identified Mr. Johnson as one of the persons who had robbed him two days earlier, the authorities arrested Mr. Johnson for aggravated robbery.[2] Mr. Johnson later gave a written confession to the robbery of Mr. Watkins.

---

[1]*See* Tenn. Code Ann. § 39-16-502 (2006).

[2]*See* Tenn. Code Ann. § 39-13-402(a) (2006).

On May 22, 2007, the Shelby County General Sessions Court conducted a preliminary hearing on Mr. Johnson's aggravated robbery charge. The general sessions court found sufficient probable cause, bound the case over to the Shelby County grand jury, and set Mr. Johnson's bail at $100,000. The preliminary hearing on the false police report charge was held on May 23, 2007. At that time, the general sessions court dismissed the false police report charge for lack of prosecution.

On December 11, 2007, the Shelby County grand jury indicted Mr. Johnson for initiating a false police report. On January 8, 2008, Mr. Johnson pleaded guilty to the lesser included offense of criminal attempt to make a false police report and received a one-year sentence.

The Shelby County grand jury indicted Mr. Johnson for aggravated robbery on January 15, 2008. Mr. Johnson moved to dismiss this indictment on April 11, 2008, arguing that the offenses of aggravated robbery and making a false police report were required to be consolidated in accordance with Tenn. R. Crim. P. 8(a)(1)(A) because they arose from the same conduct. Following a hearing on May 6, 2008, the Criminal Court for Shelby County filed an order on June 27, 2008, concluding that "it seems clear that the false report of the auto theft shortly after the commission of the aggravated robbery was part of the same criminal episode, though not the same conduct" and that "[t]hese two offenses should have been consolidated in the same indictment." Accordingly, the trial court dismissed the aggravated robbery indictment against Mr. Johnson.

The State appealed from the dismissal of the aggravated robbery indictment. The majority of the Court of Criminal Appeals panel that heard the case acknowledged that the two offenses were separated by both time and place and that "the two offenses do not necessarily involve proof of each other." *State v. Johnson*, No. W2008-01593-CCA-R3-CD, 2009 WL 4263653, at *8-9 (Tenn. Crim. App. Nov. 30, 2009). Nevertheless, the majority affirmed the dismissal of the aggravated robbery indictment based on its belief that doing so was required by Tenn. R. Crim. P. 8(a)'s policy of "avoid[ing] piecemeal litigation." *State v. Johnson*, 2009 WL 4263653, at *9 (quoting *State v. Baird*, 88 S.W.3d 617, 621 (Tenn. Ct. App. 2001).

Judge Alan Glenn filed a dissenting opinion. *State v. Johnson*, 2009 WL 4263653, at *9-11 (Glenn, J., dissenting). Judge Glenn disagreed with the majority's decision that the two offenses arose out of the same criminal episode because (1) either crime could be prosecuted without proof of the other and (2) one of the offenses – the aggravated robbery – had been completed before the other offense had begun. *State v. Johnson*, 2009 WL 4263653 at *10-11 (Glenn, J., dissenting).

We granted the State's application for permission to appeal to determine whether Tenn. R. Crim. P. 8(a)(1)(A) required that the two offenses committed by Mr. Johnson be consolidated for trial. We have determined that the majority of the Court of Criminal Appeals erred by finding that Mr. Johnson's initiating a false police report offense and aggravated robbery offense were part of the same criminal episode.

## II.

The parties agree that all the facts relevant to the issues in this case are undisputed. Thus, this case involves solely the proper application of Tenn. R. Crim. P. 8 to the undisputed facts. Issues regarding the construction and interpretation of rules of court, including the Tennessee Rules of Criminal Procedure, involve questions of law. *See Lacy v. Cox*, 152 S.W.3d 480, 483 (Tenn. 2004)*; Green v. Moore*, 101 S.W.3d 415, 418 (Tenn. 2003). Therefore, we review the lower courts' construction of the rules de novo with no presumption of correctness, *State v. Ferrante*, 269 S.W.3d 908, 911 (Tenn. 2008), using essentially the same rules of construction that courts employ to construe statutes. *State v. Crowe*, 168 S.W.3d 731, 744 (Tenn. 2005).

## III.

The principles regarding joinder and severance of criminal offenses for trial are relatively undeveloped because "relatively few criminal cases go to trial" and because "neither the prosecution nor the defense has developed a consistent institutional position with respect to joinder and severance."[3] Both the prosecution's and the defendant's decisions regarding joinder and severance are influenced by a range of practical and tactical factors, including the merits of the individual cases, the readiness of the cases for trial, the "defendant's right to a fair trial before an impartial jury (uninfluenced by evidence of other offenses)," the cost and delay of multiple trials, and the desire to resolve all the charges with dispatch.[4] Accordingly, as the ABA Standards for Criminal Justice point out:

> If prosecutors and defendants have difficulty deciding whether joinder or severance is more advantageous in a particular case, it is not surprising that judges have difficulty in evolving and articulating standards or rules for resolving the

---

[3] 2 ABA Standards for Criminal Justice: Joinder and Severance, at 13·4 (2d ed. 1980) ("ABA Standards for Criminal Justice").

[4] 2 ABA Standards for Criminal Justice, at 13·4-13·5.

> conflicts that occur when the prosecution and defense reach
> opposite conclusions in the same case.

2 ABA Standards for Criminal Justice, at 13·5.

Early on, the prevailing view – animated by the belief that trial courts were charged with safeguarding the rights of both the prosecution and the defendant – left decisions regarding the consolidation of charges, even charges involving separate and distinct crimes, to the sound discretion of the trial court.[5]  These discretionary decisions were rarely overturned.  *State v. Shirley*, 6 S.W.3d 243, 245-46 (Tenn. 1999).  However, a minority of states, including Tennessee,[6] held that charges involving separate and distinct crimes – not arising out of the same or related acts or not provable by the same evidence – should not be consolidated over the defendant's objection.[7]

The principles governing the joinder or consolidation of offenses were codified in the Tennessee Rules of Criminal Procedure, which first became effective on July 13, 1978.[8]  Currently, the principles governing the joinder or consolidation of offenses are found in Tenn. R. Crim. P. 8 regarding the joinder of offenses and defendants, and the complementary provisions of Tenn. R. Crim. P. 13 and 14 regarding the consolidation or severance of offenses and defendants.

Tenn. R. Crim. P. 8 embodies a significant departure from the earlier court-made principles governing joinder of offenses.  Prior to Tenn. R. Crim. P. 8's adoption, Tennessee law, like the rules governing the federal courts and a majority of state courts,[9] merely permitted the joinder of related offenses.  Tenn. R. Crim. P. 8(a), however, requires the State to join certain categories of offenses in order to "promote efficiency and economy" by "encourag[ing] the disposition in a single trial of multiple offenses arising from the same

---

[5]*See* 2 ABA Standards for Criminal Justice, at 13·4; M.C. Dransfield, Annotation, *Consolidated Trial upon Several Indictments or Informations Against Same Accused, Over His Objection*, 59 A.L.R.2d 841, 845 (1958) ("Dransfield").

[6]*Bruce v. State*, 213 Tenn. 666, 667, 670, 378 S.W.2d 758, 759-60 (1964).

[7]*See Bullard v. State*, 208 Tenn. 641, 644-46, 348 S.W.2d 303, 305 (1961); *see also Commonwealth v. Bickum*, 26 N.E. 1003, 1003 (Mass. 1891); Dransfield, 59 A.L.R.2d at 858-59 (cataloging the states that disallow consolidation over the defendant's objection).

[8]*See* Tenn. R. Crim. P. 59 advisory comm'n cmt.

[9]*See* Fed. R. Crim. P. 8(a); 2 Nancy Hollander et al., *Wharton's Criminal Procedure* § 11:2, at 11-6 to 11-7 (14th ed. 2010); 5 Wayne R. LaFave et al., *Criminal Procedure* § 17.1(a), at 2 (3d ed. 2007).

conduct and from the same criminal episode."[10]  One of the purposes of the mandatory joinder requirements in Tenn. R. Crim. P. 8(a) is to stop the practice by some prosecuting attorneys of "saving back" charges because this practice necessitates multiple trials and adversely affects discovery, plea bargaining, and other pre-trial procedures. *State v. Baird*, 88 S.W.3d 617, 621 (Tenn. Ct. App. 2001); *State v. Fowler*, No. 03C01-9207-CR-00249, 1993 WL 278468, at *7 (Tenn. Crim. App. July 27, 1993); Tenn. R. Crim. P. 8 advisory comm'n cmt.

Tenn. R. Crim. P. 8(a)(1) states:

> Two or more offenses shall be joined in the same indictment, presentment, or information, with each offense stated in a separate count, or the offenses consolidated pursuant to Rule 13, if the offenses are:
> (A) based on the same conduct or arise from the same criminal episode;
> (B) within the jurisdiction of a single court; and
> (C) known to the appropriate prosecuting official at the time of the return of the indictment(s), presentment(s), or information(s).

The failure by the State to join all the "same conduct" or "same criminal episode" offenses in the original indictment prevents the State from subsequently prosecuting the other charges that should have been included in the original indictment unless the charges have been severed in accordance with Tenn. R. Crim. P. 14(b)(2).[11]  Tenn. R. Crim. P. 8(a)(2); Tenn. R. Crim. P. 8 advisory comm'n cmt. (stating that charges that have been saved back "are barred from future prosecution if known to the appropriate prosecuting official at the time that the other prosecution is commenced, but deliberately not presented to a grand jury"); *see also King v. State*, 717 S.W.2d 306, 308 (Tenn. Crim. App. 1986).[12]

---

[10]Tenn. R. Crim. P. 8 advisory comm'n cmt.

[11]Tenn. R. Crim. P. 14(b)(2) provides the criteria for severing offenses that have been mandatorily joined pursuant to Tenn. R. Crim. P. 8(a)(1).  The criteria for severing mandatorily joined offenses are not at issue in this case.

[12]In addition to the mandatory joinder requirements in Tenn. R. Crim. P. 8(a), the Tennessee Rules of Criminal Procedure continue to permit permissive joinder of certain categories of offenses.  Tenn. R. Crim. P. 8(b) provides that:

(continued...)

The mandatory joinder provisions in Tenn. R. Crim. P. 8(a)(1) apply only to "same conduct" and "same criminal episode" offenses. Offenses arising out of the same conduct are the most easily understood. The simplest example of a same conduct offense involves a single act that results in a number of interrelated offenses. Thus, a defendant's rape of his daughter[13] or a defendant's firing of a single gunshot that hits two victims are examples of multiple offenses precipitated by the same act or conduct. *See* 2 ABA Standards for Criminal Justice § 13-1.2 cmt., at 13·9 (citing *Scott v. State*, 248 N.W. 473 (Wis. 1933)); 9 David Louis Raybin, *Tennessee Practice: Criminal Practice and Procedure* § 17:16, at 595 (rev. ed. 2008) ("*Tennessee Criminal Practice and Procedure*").[14]

The concept of the "same criminal episode" entered the judicial lexicon in Tennessee in 1973, five years before the Tennessee Rules of Criminal Procedure became effective. *Duchac v. State*, 505 S.W.2d 237, 240 (Tenn. 1973). The issue in the case did not involve the joinder or severance of offenses but rather the identity of the offenses of third degree burglary and carrying burglarious instruments. *Duchac v. State*, 505 S.W.2d at 238. The Court concluded that "the mere fact that both offenses grew out of a single criminal episode does not make them a single offense in this particular case" because "none of the evidence required to prove carrying burglarious instruments is necessary to prove commission of third degree burglary." *Duchac v. State*, 505 S.W.2d at 240.[15]

---

[12](...continued)
> Two or more offenses may be joined in the same indictment, presentment, or information, with each offense stated in a separate count, or consolidated pursuant to Rule 13, if:
> > (1) the offenses constitute parts of a common scheme or plan; or
> > (2) they are of the same or similar character.

However, a defendant has a right to insist on the severance of permissively joined offenses unless the offenses are part of a common scheme or plan and the evidence of one would be admissible in the trial of the others. Tenn. R. Crim. P. 14(b)(1); *State v. Dotson*, 254 S.W.3d 378, 386 (Tenn. 2008). This case does not directly implicate the criteria for permissive joinder.

[13]*See State v. Rogers*, 703 S.W.2d 166, 168 (Tenn. Crim. App. 1985) (charges of both rape and incest).

[14]A more complex example of same conduct offenses could arise from a course of conduct such as when "the same series of physical acts generates charges of resisting arrest and assault." Same conduct offenses may also be committed by multiple defendants, such as when "one defendant commits the offense at the instigation of another defendant." 2 ABA Standards for Criminal Justice § 13-1.2 cmt., at 13·9.

[15]The Court employed the same phrase two years later when it held that the offenses of armed robbery and assault with intent to commit second degree murder were not identical, even though they were

(continued...)

The Court did not undertake to define "single criminal episode" in either *Duchac v. State* or *State v. Black*, nor did the drafters of the Tennessee Rules of Criminal Procedure. However, the American Bar Association Standards for Criminal Justice that were approved in 1978 contain the following definition:

> "Single criminal episode" offenses normally are generated by separate physical actions. The actions may be committed by separate defendants. In other respects, however, they are similar to same conduct offenses: they occur simultaneously or in close sequence, and they occur in the same place or in closely situated places.[16] A critical characteristic of single episode offenses, particularly in cases involving otherwise unrelated offenses[17] or offenders, is the fact that proof of one offense necessarily involves proof of the others.

2 ABA Standards for Criminal Justice § 13-1.2 cmt., at 13·10 (footnotes added).[18] In the three decades following the promulgation of the Tennessee Rules of Criminal Procedure, the Court of Criminal Appeals has quoted the commentary to Standard 13-1.2 with approval,[19]

---

[15](...continued)
committed "in the course of a single 'criminal episode'" because the statutory elements of the two offenses were different and because neither offense was included in the other. *State v. Black*, 524 S.W.2d 913, 920 (Tenn. 1975).

[16] A treatise on Tennessee criminal practice and procedure contains the following similar description of a criminal episode: "[a] 'criminal episode' . . . relates to several distinct offenses which arise out of separate actions or conduct but which occur in a closely connected series of events in place and time." 9 *Tennessee Criminal Practice and Procedure* § 17:16, at 595. The treatise also aptly describes a criminal episode as involving "offenses where there is an unbroken flow of events divisible into distinct crimes where the same evidence proposition is self evident." 9 *Tennessee Criminal Practice and Procedure* § 17:17, at 601.

[17] Under the ABA Standards for Criminal Justice, "[u]nrelated offenses" are "any offenses which are not 'related' offenses." 2 ABA Standards for Criminal Justice § 13-1.3, at 13·10. "Two or more offenses are related offenses if they are based upon the same conduct, upon a single criminal episode, or upon a common plan." 2 ABA Standards for Criminal Justice § 13-1.2, at 13·9.

[18] The term "single criminal episode" is also incorporated into the Model Penal Code and the Uniform Rules of Criminal Procedure. *See* Model Penal Code § 1.07(2), 10A U.L.A. 36 (2001); Unif. Rules of Criminal Procedure Rule 471(a) (1987), 10 U.L.A. 148 (2001).

[19] *State v. Baird*, 88 S.W.3d at 621; *see also State v. Gentry*, No. E2005-01133-CCA-R3-CD, 2006 WL 891211, at *3 (Tenn. Crim. App. Apr. 4, 2006) (No Tenn. R. App. P. 11 application filed); *State v.*
(continued...)

-8-

but neither this Court nor the Court of Criminal Appeals has undertaken to provide a more precise definition of "same criminal episode."[20]

We have determined that the criteria for a "single criminal episode" found in the ABA Standards for Criminal Justice is consistent with our understanding of Tenn. R. Crim. P. 8(a)(1)(A) and that it should be adopted. Our review of the decisions handed down by Tennessee's courts since Tenn. R. Crim. P. 8 first became effective in 1978 convinces us that the courts have appropriately recognized that for Tenn. R. Crim. P. 8(a)(1)(A) to apply, the acts to be included in the same criminal episode must occur simultaneously or in close sequence and must occur in the same place or in closely situated places. A break in the action may be sufficient to interrupt the temporal proximity required for a single criminal episode to exist. *See* 9 *Tennessee Criminal Practice and Procedure* § 17:17, at 601.

The judicial decisions, however, do not reflect adequate emphasis on the requirement that in order for a single criminal episode to exist, the "proof of one offense necessarily involves proof of the others." 2 ABA Standards for Criminal Justice § 13-1.3 cmt., at 13·10. This means that the proof of one offense must be "inextricably connected" with the proof of the other, *see State v. Shepherd*, 902 S.W.2d 895, 904 (Tenn. 1995), or that the proof of one offense forms a "substantial portion of the proof" of the other offense. *See United States v. Montes-Cardenas*, 746 F.2d 771, 776 (11th Cir. 1984). While the offenses need not be based solely on the same facts, requiring a substantial interrelationship between the evidence required to prove each of several offenses "properly focuses the trial court's inquiry on the degree to which the defendant is harassed and judicial resources wasted by successive prosecutions." *People v. Rogers*, 742 P.2d 912, 919 (Colo. 1987) (en banc).

As the Colorado Supreme Court has pointed out, separate trials for crimes that do not share a substantial factual nexus do not prejudice the defendant. *People v. Rogers*, 742 P.2d at 919. However, when "the proof or defense of one charge necessarily involves the proof or defense of another charge, sequential prosecutions of the two charges burden both the defendant and the state with repetitive presentation of evidence." *People v. Rogers*, 742 P.2d at 919.

---

[19](...continued)
*Kestner*, No. M2004-02478-CCA-R3-CD, 2006 WL 359698, at *5 (Tenn. Crim. App. Feb. 10, 2006), *perm. app. denied* (Tenn. June 26, 2006).

[20]One commentator has observed that the phrase "criminal episode" is "difficult of definition." 9 *Tennessee Criminal Practice and Procedure* § 17:16, at 595.

## IV.

We now apply these principles to the essentially undisputed facts of this case. We have determined that the two charges against Mr. Johnson were not part of the same criminal episode because, based on the facts of this case, they did not occur simultaneously or in close sequence and did not occur in the same place or in closely situated places. Mr. Johnson initiated the false police report twelve hours after he had allegedly robbed Mr. Watkins. The record does not directly address what transpired between the alleged robbery and the initiation of the false police report. Accordingly, there is no basis for concluding whether a break in the action interrupted the temporal proximity of the two offenses. Likewise, the record fails to demonstrate that the two offenses occurred in the same place or in closely situated places.

Furthermore, the proof of the aggravated robbery does not necessarily involve, and is not inextricably connected to, the proof of initiation of a false report to a law enforcement officer. The record reveals that Mr. Watkins identified Mr. Johnson as one of his assailants in a photographic lineup conducted at the police department. In order to prove the aggravated robbery, the State is likely to call Mr. Watkins as a witness to identify Mr. Johnson as one of his assailants and testify regarding the robbery. The State would also likely present as critical evidence Mr. Johnson's written confession to the robbery.

Had Mr. Johnson not pleaded guilty to a lesser included offense, the evidence that the State would likely have used to attempt to prove initiation of a false police report is largely distinct from the evidence necessary to prove aggravated robbery. The evidence necessary to prove initiation of a false police report includes Mr. Johnson's phone call to the Memphis Police Department reporting that his automobile had been stolen and the resulting interview conducted by a police officer at Mr. Johnson's mother's residence. During the course of the police interview with Mr. Johnson regarding his reportedly stolen automobile, Mr. Johnson's mother became convinced that her son was lying. She began questioning Mr. Johnson herself. Although he attempted to maintain his false story, he eventually conceded that he lied about the automobile being stolen, leading to his arrest for initiating a false police report. Most of the foregoing facts could be supported by the State with the testimony of the responding police officer and possibly Mr. Johnson's mother.

At best, the evidence of each alleged offense is relevant to support the other offense, but more than mere relevancy is required. We are unable to conclude that the evidence necessary to prove these two offenses is so inextricably connected as to require the proof of one of the alleged crimes to prove the other. Thus, the record simply does not support the conclusion of the Court of Criminal Appeals that the two charges against Mr.

-10-

Johnson arose from the same criminal episode and, therefore, that the aggravated robbery charge against Mr. Johnson must be dismissed.

**V.**

The judgment of the Court of Criminal Appeals affirming the trial court's dismissal of the aggravated robbery charge against Mr. Johnson is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion. We tax the costs of this appeal to Cedric Johnson for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUSTICE