FILED

05/15/2017

Clerk of the
Appellate Courts



# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
March 14, 2017 Session Heard at Belmont University College of Law[1]

## STATE OF TENNESSEE v. MARIO D. FREDERICK

**Appeal from the Circuit Court for Rutherford County**
No. F-72726   Royce Taylor, Judge

_____

### No. M2016-00737-CCA-R3-CD

_____

The Defendant, Mario Frederick, was convicted of two counts of solicitation of sexual exploitation of a minor, a Class E felony, two counts of solicitation of sexual exploitation of a minor less than thirteen years of age, a Class C felony, and three counts of indecent exposure, a Class B misdemeanor. He received an effective sentence of five years' incarceration. On appeal, the Defendant argues that the trial court erred by denying his motion to sever the counts of the indictment and his motion for arrest of judgment. He also contends that the evidence was insufficient to support his convictions. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and TIMOTHY L. EASTER, JJ., joined.

Gerald L. Melton, District Public Defender, for the Defendant-Appellant, Mario D. Frederick.

Herbert H. Slatery III, Attorney General and Reporter; Robert W. Wilson, Assistant Attorney General; Jennings H. Jones, District Attorney General; and Hugh Ammerman, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

On December 2, 2014, the Rutherford County Grand Jury returned a nine-count indictment charging the Defendant with two counts of soliciting sexual exploitation of a

---

[1] Oral argument was heard in this case on March 14, 2017, at Belmont University College of Law in Nashville, Tennessee.

minor,[2] three counts of soliciting sexual exploitation of a minor less than thirteen years of age, and four counts of indecent exposure.[3]  On the morning of trial, the Defendant filed a motion to sever the counts in the indictment because the offenses occurred on four separate dates and involved several victims.  The trial court denied the motion, ruling that the motion was untimely and that the Defendant's charges were properly joined "regarding the modus operandi and the identity of the [D]efendant."  Subsequently, the State dismissed count one, charging the Defendant with soliciting sexual exploitation of a minor less than thirteen years of age, and count six, charging the Defendant with indecent exposure.  A jury trial was held on August 11, 2015, at which the following proof was adduced.

The first victim to testify, twenty-seven-year-old S.C.,[4] said that, on October 3, 2013, she drove a friend to the Walgreens on Sam Ridley Parkway in Smyrna.  S.C. testified that the incident occurred around 6:00 or 7:00 in the evening and that it was still light outside.  S.C. parked and waited in the car while her friend went inside the Walgreens.  S.C. testified that, while she was sitting in her car, a "dark red SUV" pulled into the parking spot to her left.  When S.C. looked over at the SUV, she saw the Defendant sitting in the driver's seat masturbating.  S.C. testified that the windows to her car and his SUV were both rolled down and that she "could see him just plain as day."  The Defendant then exited his car and walked around the front of his SUV towards S.C. while continuing to masturbate with his pants down.  The Defendant came within two feet of S.C. and stared at her as he approached, but did not say anything.  As the Defendant approached her car, S.C. rolled her windows up and reversed out of the parking spot.  S.C. picked up her friend at the front of Walgreens as she was leaving and drove out of the parking lot.  S.C. testified that the Defendant also backed his SUV out and followed her around the Walgreens parking lot as she was driving away.  S.C. called the police and met with officers in the parking lot later the same day to make a report.  A few weeks later, S.C. saw the Defendant's photograph on television and contacted the police again.  S.C. also identified the Defendant in a photographic lineup and at trial.  On

---

[2] We note that Tennessee Code Annotated section 39-13-529 (2013) refers to the offense as "solicitation of minor to observe sexual conduct," however, the indictment, verdict, judgment forms, parties, and the Tennessee Pattern Jury Instructions refer to the offense as "solicitation of sexual exploitation of a minor."  See T.P.I. Crim. 10.23.  To avoid confusion, we will continue to refer to the offense as indicated by the indictment, verdict, judgment forms, parties, and the Tennessee Pattern Jury Instructions.  The mislabeling of the offenses in this case does not create any error in the convictions.

[3] The Defendant was originally indicted on December 2, 2013, for nine counts of indecent exposure in Indictment No. 70907.  The instant appeal concerns the superseding indictment, No. 72726, filed on December 2, 2014.

[4] It is this court's policy to refer to victims of sexual crimes by their initials only.

cross-examination, S.C. testified that there were only one or two other cars in the parking lot at the time of the incident.

Later the same day, twenty-one-year-old T.G. was grocery shopping with her two-year-old daughter at the Kroger on Sam Ridley Parkway in Smyrna. T.G. recalled that she exited the Kroger around 8:00 p.m. and that it had just gotten dark outside. T.G. testified that, as she approached her car in the parking lot, she noticed the Defendant watching her from his car, which was parked in front of her car. T.G. described the Defendant's car as a "red" or "maroon colored" SUV with "really shiny, chrome" or "silver" wheels. T.G. testified that she put her daughter in her car seat, loaded the groceries, and then got in the driver's seat. When T.G. turned her headlights on, she saw the Defendant standing in front of her car masturbating with his pants down. T.G. testified that the Defendant was about three or four feet away from her car and that he stared at T.G. as he masturbated, but did not say anything. T.G. reversed out of the parking spot while "[the Defendant] was still masturbating." T.G. "believe[d] that [her daughter] didn't see" the Defendant because "she had a toy in her hand that she was looking at." However, T.G. confirmed that, when she backed out, her car was "almost perpendicular" to the Defendant and that her daughter could have seen him if she was not playing with the toy. T.G. also testified that the Defendant's SUV was parked in a spot directly facing her car and to the left, so that the Defendant could clearly see T.G. and her daughter as she approached the driver's side of her car. T.G. did not initially contact police, but she wrote about the incident on Facebook. T.G. was later contacted by a friend, A.H., about the Facebook post, and A.H. told T.G. that she had a similar experience at a nearby Walgreens with her three-year-old daughter. T.G. subsequently reported the incident and identified the Defendant in a photographic lineup and at trial.

Three days later on October 6, 2013, C.Y. was at the K-Mart in Smyrna with her friend, S.R., and S.R.'s mother. Both C.Y. and S.R. were sixteen years old and in high school at the time. C.Y. testified that she and S.R. waited in the car while S.R.'s mother went inside the store. C.Y. was sitting in the back seat on the passenger's side behind S.R., who was in the front passenger's seat. C.Y. testified that she and S.R. noticed a SUV circling the parking lot before it pulled up beside them. C.Y. described the SUV as a "maroonish, burgundy Yukon" with shiny rims. C.Y. and S.R. noticed that someone in the car was "staring pretty hard" at them. C.Y. testified that she looked over and saw the Defendant sitting in the car with his door open and masturbating with his pants down. The Defendant's SUV was parked so close to their car that S.R. could not open the passenger door. C.Y. told her friend to run into the store and find her mother because they did not have the keys to the car. S.R. and C.Y. got out through the driver's side door and ran inside the K-Mart, where they found S.R.'s mother and called the police. C.Y. testified that when they were running in the store, the Defendant backed out of the parking spot and followed them towards the store. The Defendant did not say anything to

them during the incident. C.Y. identified the Defendant at trial and at the preliminary hearing, but could not pick the Defendant out in a photographic lineup.

S.R. testified similarly to C.Y. S.R. recalled that the Defendant's SUV was a "maroonish colored . . . Suburban" with "really silver and really shiny" rims. S.R. testified that she and C.Y. were in a small car and that the Defendant's SUV was "sitting up very high compared to us." S.R. testified that the Defendant would not stop staring down at them and that she could see the Defendant's face and eyes. The Defendant's car door was open and blocking S.R.'s door so that she could not see him masturbating. S.R. could not identify the Defendant in a photographic lineup, but she did identify him at the preliminary hearing and at trial. S.R. also identified photographs of the Defendant's SUV.

The final victim to testify, twenty-year-old A.H., was with her three-year-old daughter and her mother at the Walgreens on Sam Ridley Parkway in Smyrna on October 18, 2013. A.H. and her daughter waited in the car while A.H.'s mother went inside the Walgreens. A.H. was sitting in the middle row on the passenger side and her daughter was sitting in the third row on the passenger side in a forward-facing car seat. While they were parked, A.H. noticed a "[m]aroon Yukon" SUV drive past, reverse, and then pull into the parking spot next to the passenger side of their car. A.H. recalled that the SUV had "rims" and "tinted windows." A.H. testified that the Defendant immediately rolled his window down, looked around, opened his door, exited the SUV, and exposed himself. A.H. said that the Defendant was standing about two or three feet away from her while he masturbated without any pants on. A.H. testified that the Defendant was looking at her daughter while he was masturbating, and that she distracted her daughter with a game on her phone so that her daughter would not see him. The Defendant did not say anything during the incident, and eventually stopped and returned to his SUV. A.H. was able to obtain the license plate number from the Defendant's SUV as he drove away. After the Defendant was gone, A.H. went inside the store and called the police. A.H. recalled seeing her friend, T.G., post on Facebook about a similar incident, and, when A.H. called her, she learned that the description of the perpetrator's car was the same. A.H. identified the Defendant "immediately" in a photographic lineup, at the preliminary hearing, and at trial. She also identified photographs of the Defendant's SUV. On cross-examination, A.H. testified that she believed her daughter could have seen the Defendant standing outside their car masturbating.

Smyrna Police Department Detective Rick Hall testified that his investigation of this case began when he was notified of the incident that occurred on October 6, 2013, at K-Mart involving C.Y. and S.R. Detective Hall testified that C.Y. and S.R. had seen a "maroon full-sized vehicle with chrome wheels on it and a black male inside" and that the man "open[ed] his car door and expos[ed] himself to them." Detective Hall testified

- 4 -

that they were only able to provide a description of the SUV at that time. Next, Detective Hall was notified about A.H.'s incident at the Walgreens on October 18, 2013, also involving a "maroon, large-sided SUV with chrome wheels on it and a black male who then started exposing himself and masturbating to her in the parking lot." A.H. provided a license plate number to Detective Hall as well as a description of the vehicle and the Defendant. Detective Hall testified that the vehicle was registered to the Defendant at a location in Clarksville, Tennessee, and that he obtained the Defendant's driver's license photograph which matched the Defendant's physical description.

Detective Hall testified that he was also contacted by T.G. during his investigation, who indicated that the same thing had happened to her at Kroger with her daughter. Detective Hall created a photographic lineup and met with A.H. and T.G. at T.G.'s house. T.G. viewed the lineup first and identified the Defendant, noting that the Defendant's photograph "mostly look[ed] like him." A.H. arrived later and identified the Defendant in the lineup "immediately" and said that she was "99 percent" sure about her identification. A.H. identified a photograph of the Defendant's SUV with "100 percent" certainty. Detective Hall later contacted the two juvenile victims, C.Y. and S.R., to also view the photographic lineup. C.Y. and S.R. viewed the lineups at the Smyrna Police Department, but neither could make a positive identification. However, C.Y. and S.R. did positively identify the Defendant's SUV.

Detective Hall obtained arrest warrants for the Defendant and did a media release including his photograph. Detective Hall received a tip that the Defendant was at an address in LaVergne, Tennessee, and he found the Defendant's SUV at the address. The Defendant later arrived at the apartment in another car and was arrested. Detective Hall testified that the Walgreens, Kroger, and K-Mart where the incidents occurred were all located within two miles or less of each other. Detective Hall also testified that the Defendant was arrested about three miles away from the location of the stores.

The Defendant testified that he was thirty-three years old and lived in Clarksville, Tennessee with his parents. The Defendant confirmed he drove a maroon Yukon SUV with chrome wheels and that the photographs of his SUV were accurate. The Defendant also confirmed that he was arrested at his girlfriend's apartment in LaVergne and that his SUV was at the apartment. However, the Defendant claimed that he did not commit any of the offenses charged against him. Regarding the victims' identification of his car, the Defendant said he "couldn't explain their mistakes," and, on cross-examination, the Defendant denied that he had ever been to Smyrna. The Defendant also denied that anyone else drove his car. When asked where he was on October 3, 2013, and October 6, 2013, the Defendant replied that he was "sure [he] was in Clarksville." When asked where he was on October 18, 2013, the Defendant testified that he was "[e]ither in Clarksville or . . . with [his] girlfriend."

At the conclusion of the proof, the jury found the Defendant guilty as charged. The trial court ordered an effective sentence of five years.[5] On January 12, 2016, the Defendant filed a motion for new trial and a motion for arrest of judgment, followed by an amended motion for arrest of judgment on March 4, 2016.[6] The trial court denied both motions by written order on March 11, 2016.[7] This timely appeal followed.

## ANALYSIS

The Defendant argues that the trial court erred by denying his motion to sever the counts of the indictment and his motion for arrest of judgment, and by finding that the evidence was sufficient to support his convictions. The State responds that the Defendant's charges were properly joined, that he waived any challenges to the indictment, and that the trial court properly denied his motion in arrest of judgment. The State further responds that the evidence was "more than sufficient" to find the Defendant guilty of soliciting sexual exploitation of a minor and indecent exposure.

**I.  Severance of the Indictment.** First, the Defendant argues that the trial court improperly denied his motion to sever the counts of the indictment. Specifically, the Defendant contends that the trial court erred by determining that he had waived the motion as untimely and by determining that the charges were properly consolidated "regarding modus operandi and identity of the [D]efendant, without full consideration of the issues presented and making written findings of fact." The State concedes that the Defendant's motion was timely, but argues that the trial court properly denied the Defendant's request for severance because the offenses were part of a "common scheme or plan" and because evidence of each offense would have been admissible at separate trials. Regardless, the State contends that any error was harmless in light of the entire record.

As an initial matter, we will address the timeliness of the Defendant's motion for severance. The record reflects that trial was originally set for June 29, 2015, and that the Defendant filed his motion for severance the same day. In a hearing in chambers that morning, the State informed the trial court that the parties "ha[d] not reached an

---

[5] The sentencing hearing transcript was not included in the record provided.

[6] The record also reflects that the Defendant filed a petition for post-conviction relief on January 14, 2016, which the trial court denied as "premature in light of [the] Defendant's pending appeal of this matter."

[7] The transcript from the motion for arrest of judgment and motion for new trial hearing was not included in the record provided.

- 6 -

agreement as to severance," and requested a brief hearing on the issue, to which the Defendant agreed. However, the trial court noted that he had "already listened to the suppression hearing, which put on much of the same proof that was in the preliminary hearing," and that the Defendant's motion was not timely and, therefore, the issue was waived. The trial court further held that "even if it is timely, it appears to me that it meets the proper criteria to join these offenses under the modus operandi issue and the [sic] establishing the identity." On appeal, the State concedes the waiver issue in a brief footnote, stating that "[s]ince the [D]efendant filed his motion to sever before the day of his jury trial, the State concedes that the [D]efendant timely filed his motion to sever." While it is technically true that the Defendant's motion was filed before trial, it is only because the trial was continued, and the record does not reflect why it was continued. The Defendant's motion was filed the original day of trial. Potential waiver notwithstanding, we conclude that the Defendant is not entitled to relief because the offenses were properly joined.

If two or more offenses are joined in the same indictment or are consolidated, a defendant may contest the joinder by filing a motion to sever offenses. In the event that the offenses were permissively joined, "the defendant has the right to a severance of the offenses unless the offenses are part of a common scheme or plan and the evidence of one would be admissible in the trial of the others." Tenn. R. Crim. P. 14(b)(1). In the event that the offenses were mandatorily joined, the State or the defendant may file a motion for severance before trial, and the court must grant this request if "the court finds a severance appropriate to promote a fair determination of the defendant's guilt or innocence of each offense." Tenn. R. Crim. P. 14(b)(2)(A). Therefore, a trial court must determine whether joinder was mandatory or permissive before deciding whether to grant or deny a motion to sever.

Although the trial court denied the motion to sever and issued a written order, it did not specify whether the joinder was mandatory or permissive, and it did not make any findings of fact or identify the analysis it conducted in order to make this determination. See State v. Michael Montell Williams, No. E2010-02402-CCA-R3-CD, 2011 WL 5137179, at *16 (Tenn. Crim. App. Oct. 28, 2011). Accordingly, where "the trial court erred in its failure to utilize the proper procedure and analysis[,]" this court "must conduct the analysis that the trial court failed to conduct." State v. Garrett, 331 S.W.3d 392, 404 (Tenn. 2011). To determine whether denying the motion to sever was proper, this court may rely on the evidence adduced at trial if the trial court does not hold an evidentiary hearing on the motion to sever. Id.

First, we must determine whether joinder in this case was mandatory or permissive. Two or more offenses shall be mandatorily joined in the same indictment if the offenses are "based on the same conduct or arise from the same criminal episode[.]"

Tenn. R. Crim. P. 8(a)(1)(A). Offenses based on the same conduct involve "a single act that results in a number of interrelated offenses." State v. Johnson, 342 S.W.3d 468, 473 (Tenn. 2011). On the other hand, offenses that arise from the same criminal episode "normally are generated by separate physical actions." Id. at 474 (quoting 2 ABA Standards for Criminal Justice § 13-1.2 Commentary, at 13.10). These separate physical actions "must occur simultaneously or in close sequence and must occur in the same place or in closely situated places." Johnson, 342 S.W.3d at 475. A gap in time between these actions "may be sufficient to interrupt the temporal proximity required for a single criminal episode to exist." Id. (citing 9 Tennessee Criminal Practice and Procedure § 17:17, at 601).

In this case, because the charges against the Defendant arose from different acts, the offenses must be part of the "same criminal episode" in order for the offenses to be mandatorily joined. Although the incidents did not occur simultaneously, all of the offenses occurred in close sequence and in closely situated places, i.e., within a two-mile radius and in various retail parking lots. However, the time which elapsed between the offenses, ranging from a few hours to fifteen days, was sufficient "to interrupt the temporal proximity required for a single criminal episode to exist." Johnson, 342 S.W.3d at 475 (citing Tennessee Criminal Practice and Procedure § 17:17, at 601). We, therefore, conclude that joinder of the offenses in this case must be permissive.

A defendant has an absolute right to severance of offenses that have been permissively joined pursuant to Tennessee Rules of Criminal Procedure 8(b)(2) unless the offenses are part of a common scheme or plan and the evidence of one would be admissible in the state's case-in-chief upon the trial of the others. Tenn. R. Crim. P. 14(b)(1). To avoid severance, both portions of the rule must be satisfied. See State v. Hallock, 875 S.W.2d 285, 289 (Tenn. Crim. App. 1993).

The first prong of Rule 14(b)(1) of the Tennessee Rules of Criminal Procedure requires that the trial court find a common scheme or plan. There are three types of common scheme or plan evidence: (1) offenses that reveal a distinctive design or are so similar as to constitute "signature" crimes; (2) offenses that are part of a larger, continuing plan or conspiracy; and (3) offenses that are all part of the same criminal transaction. State v. Moore, 6 S.W.3d 235, 240 (Tenn. 1999). In this case, the State argues that the various offenses were committed with a distinctive design.

Before multiple offenses may be said to evince a distinctive design, and therefore give rise to an inference of identity, the "modus operandi employed must be so unique and distinctive as to be like a signature." State v. Carter, 714 S.W.2d 241, 245 (Tenn. 1986). Although the offenses need not be identical in every respect, Bunch v. State, 605 S.W.2d 227, 231 (Tenn. 1980), the methods used in committing the offenses must have

- 8 -

"such unusual particularities that reasonable men can conclude that it would not likely be employed by different persons." See Harris v. State, 227 S.W.2d 8, 11 (Tenn. 1950). "Only when the method used to commit the crimes is so unique as to be like a signature can the inference of identity properly arise." State v. Shirley, 6 S.W.3d 243, 249 (Tenn. 1999).

In our review of the record, we conclude that the similarities in the offenses establish that the crimes were committed with a distinct design or unique method. First, all four incidents occurred within a two-week period of October 2013, and two of the four incidents occurred on the same day. The victims were all young females who were sitting in cars parked in retail parking lots within a two-mile radius of Smyrna, Tennessee, and two of the incidents occurred in the same Walgreens parking lot. The victims also identified the Defendant's SUV, which was a dark red or maroon color with unique chrome rims. However, more importantly, S.C., T.G., C.Y., S.R., and A.H. all testified that the Defendant parked his SUV close to the victims, opened his door or exited his vehicle and stood within a few feet of the victims, and masturbated with his pants down while silently starring at the victims before getting back in his SUV and driving away. This court has noted that "[a]lthough there are some differences between the . . . offenses, it is not necessary that the . . . crimes be identical in every detail." State v. Hoyt, 928 S.W.2d 935, 944 (Tenn. Crim. App. 1995), overruled on other grounds by State v. Spicer, 12 S.W.3d 438, 447 n.12 (Tenn. 2000). Accordingly, we conclude that the offenses were of a distinctive design indicative of a common scheme or plan.

The second prong of Rule 14(b)(1) requires that the evidence of each offense be admissible at the trial of the other. Tennessee Rule of Evidence 404(b) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait." Tenn. R. Evid. 404(b). However, "other crimes, wrongs or acts" are admissible under Rule 404(b) when they are alleged to be a part of a common scheme or plan that is relevant to a material issue at trial. See Bunch, 605 S.W.2d at 229. Typically, offenses that are part of a common scheme or plan are offered by the State to establish the identity of a perpetrator. See State v. McCary, 922 S.W.2d 511, 514 (Tenn. 1996) (citing State v. Parton, 694 S.W.2d 299, 303 (Tenn. 1985) (stating that common scheme or plan evidence is most often used "when the identity of the defendant is in issue"). Indeed, identity is usually the only relevant issue supporting admission of other offenses when the theory of the common scheme or plan is grounded upon a signature crime. See, e.g., State v. Hoyt, 928 S.W.2d 935, 943 (Tenn. Crim. App. 1995).

In this case, we conclude that the evidence of the crimes against one of the victims would be admissible upon the trial of the others to establish the identity of the Defendant, which was a material issue at trial. In fact, the Defendant made his identity a central

- 9 -

issue by claiming that he did not commit the offenses and that he had never even been to the city where the offenses were committed. Furthermore, "[t]he similarity of the acts makes the probative value particularly significant." State v. Edwards, 868 S.W.2d 682, 691 (Tenn. Crim. App. 1993). We conclude that the trial court correctly consolidated the offenses for trial.

**II. Indictment.** Next, the Defendant argues that the trial court improperly denied his motion for arrest of judgment, which alleged that the indictment listed the wrong mens rea for counts one through five, charging him with soliciting sexual exploitation of a minor, and, therefore, did not allege an essential element of the offense. The Defendant contends that, because the indictment did not allege an essential element, the indictment failed to charge an offense and his convictions should be reversed. The State responds that, although the indictment contains a defect in charging the wrong mental state, the Defendant has waived the issue by failing to raise it before trial. Nevertheless, the State argues that the indictment is proper because it made reference to the appropriate statute violated.

Counts one through three of the indictment provided as follows:

THE GRAND JURORS of RUTHERFORD County, Tennessee, duly empaneled and sworn upon their oath present that in RUTHERFORD County, Tennessee and before a finding of this indictment on a day in October, 2013 Mario Frederick did unlawfully and knowingly engage in sexual activity that is patently offensive for the purpose of having the minor (under 13 years) view the sexual activity or simulated sexual activity in violation of T.C.A. 39-13-529[.]

Counts four and five of the indictment provided as follows:

THE GRAND JURORS of RUTHERFORD County, Tennessee, duly empaneled and sworn upon their oath present that in RUTHERFORD County, Tennessee and before a finding of this indictment on a day in October, 2013 Mario Frederick did unlawfully and knowingly engage in sexual activity that is patently offensive for the purpose of having the minor view the sexual activity or simulated sexual activity in violation of T.C.A. 39-13-529[.]

Tennessee Code Annotated section 39-13-529 provides, in pertinent part, as follows:

(b) It is unlawful for any person eighteen (18) years of age or older, directly or by means of electronic communication, electronic mail or internet service, including webcam communications, to intentionally:

(1) Engage in simulated sexual activity that is patently offensive or in sexual activity for the purpose of having the minor view the simulated sexual activity or sexual activity, including circumstances where the minor is in the presence of the person, or where the minor views such activity via electronic communication, including electronic mail, Internet service and webcam communications;

T.C.A. § 39-13-529(b)(1) (emphasis added).

We first must address the question of waiver for failure to raise this matter pre-trial. The Defendant initially raised the indictment issue in a motion for arrest of judgment pursuant to Tennessee Rule of Criminal Procedure 34, which provides that "[t]he court on motion of a defendant shall arrest judgment if: (1) the indictment, presentment or information does not charge an offense; or (2) the court was without jurisdiction of the charged offense." The Defendant timely filed his motion for arrest of judgment, which must be "filed within thirty days of the date the order of sentence is entered."[8] Tenn. R. Crim. P. 34(b). Furthermore, Tennessee Rule of Criminal Procedure 12(b) provides that motions alleging a defect in the indictment need not be made prior to trial if the indictment "fails to show jurisdiction in the court or to charge an offense." See Tenn. R. Crim. P. 12(b)(2). Since the Defendant has claimed that the count failed to charge an offense, his allegation did not need to be raised pre-trial. Thus, this issue is not waived.

We, therefore, move to the question of whether the counts at issue charge an offense. The United States Constitution and the Tennessee Constitution state that a defendant is entitled to knowledge of "the nature and cause of the accusation." U.S. Const. amend. VI; Tennessee Const. art. I, § 9. The Tennessee Supreme Court has stated that an indictment is valid if it contains sufficient information (1) to enable the defendant to know the accusation to which answer is required, (2) to furnish the court adequate basis for the entry of a proper judgment, and (3) to protect the defendant against double jeopardy. State v. Hammonds, 30 S.W.3d 294, 302 (Tenn. 2000) (citing State v. Hill, 954 S.W.2d 725, 727 (Tenn. 1997)). In addition, pursuant to Tennessee Code Annotated section 40-13-202, the indictment must

---

[8] The trial court signed the judgment forms on December 14, 2015, and the Defendant filed his motion for arrest of judgment on January 12, 2016, followed by an amendment on March 4, 2016.

- 11 -

state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in such a manner so as to enable a person of common understanding to know what is intended, and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment . . . .

T.C.A. § 40-13-202; see also Hammonds, 30 S.W.3d at 300 (stating that "indictments which achieve the overriding purpose of notice to the accused will be considered sufficient to satisfy both constitutional and statutory requirements").

The solicitation of sexual exploitation of a minor statute provides that "[i]t is unlawful for any person eighteen (18) years of age or older . . . to intentionally . . . [e]ngage in simulated sexual activity that is patently offensive or in sexual activity for the purpose of having the minor view the simulated sexual activity or sexual activity . . ." T.C.A. § 39-13-529(b)(1). As noted above, however, the indictment in this case stated that soliciting the sexual exploitation of a minor requires only that the Defendant "knowingly" engage in the prohibited sexual activity.[9] The Defendant argues that this discrepancy rendered the counts of the indictment charging solicitation of sexual exploitation of a minor as void, because the indictment failed to charge an offense. However, this court has held that an indictment which references the wrong mens rea for the offense charged is not void when "there was a specific reference in the indictment to the statute allegedly violated" and the "culpable mental state was easily ascertained by reference to [that] statute." State v. Tyrone Sain, No. 02C01-9710-CC-00379, 1998 WL 999905, at *4 (Tenn. Crim. App. Dec. 24, 1998); see also Montez Adams v. Cherry Lindamood, Warden, No. M2016-01073-CCA-R3-HC, 2017 WL 564897 (Tenn. Crim. App. Feb. 13, 2017) (holding that an indictment which referenced the incorrect mental state but included the correct statute for the offense charged was not invalid), motion to accept late perm. app. filed (Tenn. Apr. 20, 2017). Additionally, the record reflects that the jury was correctly instructed on the statute's "intentional" mens rea requirement. Based upon the foregoing, we conclude that the Defendant is not entitled to relief on this issue.

**III.   Sufficiency of the Evidence.**   Finally, the Defendant challenges the sufficiency of the convicting evidence. Specifically, he challenges the convictions for solicitation of sexual exploitation of a minor in counts two and three. The Defendant additionally challenges the sufficiency of the evidence establishing his identity as to all of his convictions. The State responds that the jury had "more than sufficient evidence" to convict the Defendant on all charges.

---

[9] We note that the original indictments returned on December 2, 2013, reflect the correct mental state of "intentionally" rather than "knowingly."

"Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the criminal defendant bears the burden on appeal of showing that the evidence was legally insufficient to sustain a guilty verdict." State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009) (citing State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992)). When this court evaluates the sufficiency of the evidence on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. State v. Davis, 354 S.W.3d 718, 729 (Tenn. 2011) (citing State v. Majors, 318 S.W.3d 850, 857 (Tenn. 2010)). When a defendant challenges the sufficiency of the evidence, the standard of review applied by this court is "whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" State v. Parker, 350 S.W.3d 883, 903 (Tenn. 2011) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt."

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Sutton, 166 S.W.3d 686, 691 (Tenn. 2005); State v. Hall, 976 S.W.2d 121, 140 (Tenn. 1998). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting Hanson, 279 S.W.3d at 275). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. State v. Campbell, 245 S.W.3d 331, 335 (Tenn. 2008) (citing Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence and the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. Dorantes, 331 S.W.3d at 379 (citing State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006)). When considering the sufficiency of the evidence, this court shall not substitute its inferences for those drawn by the trier of fact. Id.

Tennessee Code Annotated section 39-13-529(b)(1) (2013) defines the offense of soliciting sexual exploitation of a minor as a person over the age of eighteen directly and intentionally engaging in sexual activity for the purpose of having the minor view the sexual activity, including circumstances where the minor is in the presence of the person. Additionally, if the minor is less than thirteen years old, the violation is a Class C felony. Id. § 39-13-529(f)(2) (2013). As relevant here, the term "sexual activity" includes "[m]asturbation." Id. § 39-13-529(e)(4)(B) (2013). A person "acts intentionally with respect to the nature of the conduct or to a result of the conduct when it is the person's

conscious objective or desire to engage in the conduct or cause the result." Id. § 39-11-302(a).

First, count two of the indictment alleged that the Defendant "masturbated in the presence of [T.G.'s] two[-]year[-]old daughter on October 3rd, 2013, in the Kroger parking lot in Smyrna, Tennessee." The Defendant argues that the proof is insufficient to show that the act alleged in count two was performed "for the purpose of having the minor view the simulated activity, because had that been his purpose, he could have engaged in those acts as [T.G.] and her child walked past him." The Defendant appears to argue that, because he waited to engage in the sexual activity until the child was inside the car, rather than outside of the car, he did not intend to have the child view the activity. However, we are not persuaded. The evidence presented at trial supports a finding that the Defendant did act for the purpose of having the minor view the sexual activity. T.G. testified that the Defendant watched her and her two-year-old daughter from his SUV as they walked past him and approached their car in the Kroger parking lot. T.G. also testified that, once she and her daughter were inside their car, the Defendant exited his SUV and masturbated in front of T.G.'s car while staring at her. The evidence shows that the Defendant knew the child was with T.G. and then chose to engage in the sexual act in front of the child. From this evidence, a rational juror could conclude that the Defendant intentionally engaged in sexual activity for the purpose of having T.G.'s daughter view the activity.

Next, count three of the indictment alleged that the Defendant "masturbated in the presence of [A.H.'s] three-year-old daughter on October the 18th, 2013, in a Walgreen's parking lot in Smyrna, Tennessee." Regarding this count, the Defendant argues that the proof is insufficient to show that A.H.'s daughter saw him masturbating "due to the sightlines involved from the van." However, there is no evidence that A.H.'s daughter could not see the Defendant. Rather, A.H. testified that her daughter could see the Defendant. Furthermore, the solicitation of sexual exploitation of a minor statute does not appear to require that the minor victim actually see the sexual act, only that the Defendant intentionally engaged in the sexual activity for the purpose of having the minor view it, "including circumstances where the minor is in the presence of the person." See T.C.A. § 39-13-529(b)(1). A.H. testified that the Defendant parked next to her car in the Walgreens parking lot, exited his SUV, and began masturbating while staring at A.H.'s daughter, who was sitting in the back seat. Viewed in the light most favorable to the State, the evidence at trial supports the Defendant's convictions for counts two and three.

The Defendant also argues that the proof is insufficient to prove his identity as to all counts. "The identity of the perpetrator is an essential element of any crime." Rice, 184 S.W.3d at 662 (citing State v. Thompson, 519 S.W.2d 789, 793 (Tenn. 1975)). The

- 14 -

State has the burden of proving the identity of the defendant as the perpetrator beyond a reasonable doubt. State v. Cribbs, 967 S.W.2d 773, 779 (Tenn. 1998). The identity of the defendant as the perpetrator may be established by direct evidence, circumstantial evidence, or a combination of the two. Thompson, 519 S.W.2d at 793. "The credible testimony of one identification witness is sufficient to support a conviction if the witness viewed the accused under such circumstances as would permit a positive identification to be made." State v. Radley, 29 S.W.3d 532, 537 (Tenn. Crim. App. 1999) (citing State v. Strickland, 885 S.W.2d 85, 87-88 (Tenn. Crim. App. 1993)). The identification of the defendant as the perpetrator is a question of fact for the jury after considering all the relevant proof. State v. Thomas, 158 S.W.3d 361, 388 (Tenn. 2005) (citing Strickland, 885 S.W.2d at 87). In addition, as relevant here, this court has held that "the testimony of a victim, by itself, is sufficient to support a conviction." Strickland, 885 S.W.2d at 87 (citing State v. Williams, 623 S.W.2d 118, 120 (Tenn. Crim. App. 1981)).

Here, all five victims that testified identified the Defendant at trial, and three of the five victims were able to positively identify the Defendant in a pre-trial photographic lineup. The victims also testified that they were in close proximity to the Defendant and that he stared directly at them, allowing them to clearly see the Defendant's face and identify him. This testimony, alone, is sufficient to sustain the convictions. See Strickland, 885 S.W.2d at 87. The jury resolved any inconsistencies or credibility issues with their verdict, and we will not reweigh or reevaluate the evidence. See Campbell, 245 S.W.3d at 335; Dorantes, 331 S.W.3d at 379. The Defendant is not entitled to relief.

## CONCLUSION

Based on the foregoing authorities and analysis, we affirm the judgments of the trial court.

_____
CAMILLE R. McMULLEN, JUDGE