IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 12, 2022

**ROBERT GLEN GRAY v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for McNairy County**
**No. 3986     J. Weber McCraw, Judge**

_____

**No. W2021-01533-CCA-R3-PC**

_____

Petitioner, Robert Glen Gray, appeals as of right from the McNairy County Circuit Court's denial of his petition for post-conviction relief, wherein he challenged his convictions for two counts of delivery of more than 0.5 grams of methamphetamine. On appeal, Petitioner asserts that he received ineffective assistance of trial counsel because counsel (1) told Petitioner that he could "beat the charges" and obtain convictions for simple possession/casual exchange of methamphetamine; (2) failed to file a motion to sever; (3) failed to review the entirety of the discovery materials with Petitioner, specifically the laboratory report on the methamphetamine and photographs of Petitioner exchanging money and drugs; and (4) failed to explain the State's plea offer "in its entirety." Following our review, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and JOHN W. CAMPBELL, SR., JJ., joined.

J. Colin Rosser, Somerville, Tennessee, for the appellant, Robert Glen Gray.

Herbert H. Slatery III, Attorney General and Reporter; Katharine K. Decker, Senior Assistant Attorney General; Mark E. Davidson, District Attorney General; and Lisa M. Miller, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**Factual and Procedural Background**

Petitioner was convicted by a McNairy County jury of two counts of delivery of 0.5 grams or more of methamphetamine. *State v. Robert Glen Gray*, No. W2019-01806-CCA-

R3-CD, 2020 WL 6127034, at *1-2 (Tenn. Crim. App. Oct. 16, 2020).  Petitioner received an effective sentence of twenty-five years.

On direct appeal, this court summarized the proof presented at trial as follows:

The CI testified that she was a confidential informant for the McNairy County Sheriff's Office Drug Task Force and had made two purchases of methamphetamine from [Petitioner], whom she had known all her life.  On the day before her first purchase, the CI "lined up" her purchase with [Petitioner].  On the day of the first purchase, May 25, 2018, the CI met with agents from the Drug Task Force, who searched the CI's person and vehicle, attached a recording device to her person, and arranged the details of the controlled purchase.  The agent gave the CI a one hundred dollar bill to make the purchase.  The CI left the meeting and went to [Petitioner]'s residence and asked [Petitioner] if he could get her $100 worth of "methamphetamines or ice."  [Petitioner] told her that he would make a telephone call and let her know whether he could get the drugs she had requested.  Shortly after, a man drove into [Petitioner]'s driveway, and [Petitioner] told the CI "that was him" and she gave [Petitioner] the money and "come to find out we had to go over to the man, Mr. Lawson Price's residence, to get the drugs."

The CI gave the money to [Petitioner] and then together they rode in [Petitioner]'s truck to Lawson Price's house.  The CI provided Mr. Price's residence's location.  Inside Mr. Price's residence, the CI and [Petitioner] went into the back bedroom where Mr. Price weighed the drugs.  The CI recalled that Mr. Price's house was very dirty with lots of animals inside.  The CI clarified that Mr. Price weighed the drugs on his scale and then handed them to [Petitioner] who then passed them to the CI.  The CI described the methamphetamine as being like "rock salt" inside a bag.  The CI drove [Petitioner] back to his residence and then she met with the Drug Task Force Agents and handed them the drugs.  They searched her person and her vehicle, and the CI provided a statement of what had occurred.  The task force agents paid the CI eighty dollars to conduct this controlled purchase.

The recording of the May 25 transaction was played for the jury and entered as an exhibit.  The CI identified hers and [Petitioner]'s voices on the recording and reiterated that he was the person to whom she gave the money and from whom she received methamphetamine in return.

The CI testified that she purchased methamphetamine from [Petitioner] a second time on June 28, 2018. Agents provided the CI with money to purchase methamphetamine from [Petitioner]. The transaction occurred similarly to the first, at Mr. Price's residence, and was also recorded.

On cross-examination, the CI agreed that she was using drugs during the time she made these two purchases from [Petitioner]. She arranged to make the purchases via the internet. [Petitioner] sold her a "sixteenth" in exchange for one hundred dollars on both occasions.

Rachel Strandquist testified that she was employed by the Tennessee Bureau of Investigation ("TBI") as a forensic scientist in the chemistry unit. The trial court admitted Agent Strandquist as an expert in the field of chemistry and narcotics analysis. She testified that she tested the drugs purchased from [Petitioner]: one sample weighed .63 grams and the other weighed 1.22 grams. Testing showed that both samples were methamphetamine.

On cross-examination, Agent Strandquist agreed that she had no knowledge of who possessed the drugs before they came to her for testing and that she could not explain why each sample was purchased for the same amount of money considering their difference in weight. On redirect-examination, she agreed that either of the samples could have contained rock salt mixed in with the methamphetamine.

Investigator J.P. Kellum testified that he was a member of the McNairy County Sheriff's Office Narcotics Unit and that he facilitated the controlled drug purchases between the CI and [Petitioner]. He testified consistently with the CI's version of the events related to both purchases. During both drug transactions, Investigator Kellum monitored the audio recording.

On cross-examination, Investigator Kellum agreed that, other than what he heard on the audio of the purchases, he had to rely on what the CI reported to him about who gave her the drugs and took the money. He agreed that he did not know whether the CI had turned off the audio recording during the purchases.

Officer Kim Holley and Investigator Matt Rickman, both employed by the Selmer Police Department and members of the McNairy County

Narcotics Unit, each testified that they were present during one of the two drug purchases and testified to what transpired during each purchase; their testimony was consistent with the CI's testimony.

*Id.* On direct appeal, Petitioner argued that the evidence was insufficient to support his convictions, and this court affirmed. *Id.*

Petitioner subsequently filed a timely pro se post-conviction petition alleging that he received ineffective assistance of trial counsel. After the post-conviction court appointed counsel, Petitioner amended the post-conviction petition to argue, in relevant part, that trial counsel did not review the entire discovery packet with Petitioner and that counsel failed to file a motion to sever the two offenses.

At the post-conviction hearing, trial counsel testified that after he was appointed to Petitioner's case, he visited Petitioner in jail and reviewed the discovery materials with him. Counsel brought a computer to the jail and played the video recording of the first drug buy and an audio recording of the second drug buy. Counsel recalled that Petitioner may not have wanted to listen to the entire audio recording because they could not "really tell a whole lot from the audio." According to counsel, the second recording began as a video, but the image cut out such that the transaction was only captured with audio. Counsel noted that the recordings were more than thirty minutes apiece and that he would have played the entirety of the recordings for Petitioner if Petitioner had wanted.

Trial counsel testified that the video-recorded drug buy showed the CI and Petitioner traveling to Lawson Price's house, where Mr. Price gave drugs to Petitioner before Petitioner handed the drugs to the CI. Counsel did not recall whether the CI handed money to Petitioner or Mr. Price, although he initially stated that the CI handed Petitioner the money. Counsel said that he discussed the legal definition of delivery to Petitioner, including that Petitioner did not have to profit from the transaction to be guilty of delivering drugs.

Trial counsel testified that he considered filing a motion to sever and decided against it because the two drug buys involved Petitioner, the same CI, and the same type of offense. Counsel did not think such a motion would have succeeded, and he noted that even if the two charges were severed, Petitioner would have been sentenced in both cases on the same day. Counsel also discussed severance with the prosecutor, who indicated to counsel that the State would try the stronger case first. Counsel remarked that the trial court ultimately ordered concurrent service of Petitioner's sentences, meaning that Petitioner's effective sentence would have been the same even if the charges had been tried separately. Counsel did not believe a motion to sever would have been granted or that it would have affected the outcome of Petitioner's case.

Trial counsel testified that at trial, the State introduced still photographs taken from the video-recorded drug buy, that the State played the video recording before entering the photographs, and that the police witness testified as to the photographs' authenticity. Counsel stated that he objected to the photographs but that the trial court overruled the objection.

Trial counsel testified that he and Petitioner discussed Petitioner's prior convictions and the State's notice that it would seek an enhanced sentence. Counsel stated that based upon Petitioner's prior drug-related convictions, he would face eighty-five percent service of his sentences if convicted and that based upon Petitioner's overall criminal record, he might have been classified as a career offender. Counsel denied telling Petitioner that he "deserved" to be sentenced as a persistent offender.

Trial counsel testified that the State made two plea offers before trial. The first offer was for Petitioner to serve twenty years at forty-five percent service, and the second offer was for Petitioner to enter a "blind plea" and seek a suspended sentence or one with lower than eighty-five percent service. Counsel reviewed the offers with Petitioner, but Petitioner chose to proceed to trial.

Trial counsel testified that Petitioner retained him as counsel in McNairy County Circuit Court case numbers 16-CR-1472, 16-CR-1473, and 16-CR-1474. In those cases, Petitioner pleaded guilty to possessing drug paraphernalia, simple possession of methamphetamine, and simple possession of marijuana, respectively. Counsel acknowledged his signature on the plea forms; the forms reflected that Petitioner pleaded guilty in 2017.

Trial counsel testified that, after trial, he sent Petitioner a letter explaining the motion for new trial and informing Petitioner that he could request a new attorney if he so desired. Counsel averred that he represented Petitioner to the best of his ability.

On cross-examination, trial counsel testified that he and Petitioner talked about counsel's hope that they could obtain convictions for simple possession/casual exchange, particularly related to the drug buy that was not captured on video. Counsel denied promising or guaranteeing such an outcome to Petitioner. Counsel stated that he played the entire video recording for Petitioner, including the portion from which the still photographs were taken. When asked whether he showed Petitioner the laboratory report on the drugs, counsel said that he received all of the discovery materials at once and reviewed everything in the file with Petitioner. Counsel affirmed that he explained to Petitioner that a "blind plea" meant the judge would hold a sentencing hearing and impose a sentence that could range from probation to the statutory maximum. Counsel discussed

with Petitioner that if he entered a blind plea, the State would remove its request for the court to impose eighty-five-percent service.

Petitioner testified that trial counsel told him that counsel "could beat" the charges and obtain convictions for casual exchange. Petitioner denied ever asking counsel to file a motion to sever. Relative to the video recording, Petitioner asserted that he never saw "where that money was in [Petitioner's] hand going across the front yard." He did not think that he ever saw the laboratory report for the drugs. Petitioner stated that counsel only informed him about the first plea offer. Petitioner said that if he had seen the still photographs and the second plea offer, he would have chosen to plead guilty.

On cross-examination, Petitioner testified that he watched the video recording but that the portion of the recording showing his hand with money in it was not included. When asked how he did not see the second plea offer given that both offers were contained in the same written document, Petitioner responded, "It's been three years since I've seen it." Petitioner identified a copy of the plea offer as the document he saw. When asked again about the second offer's being included in the document, Petitioner stated that he "didn't even pay attention to it. [He] didn't see it."[1]

The post-conviction court subsequently entered a written order denying post-conviction relief. The court accredited trial counsel's testimony and found that counsel met with Petitioner and discussed the plea offers, explained the "difficulty of a trial" based upon the State's anticipated evidence, and showed Petitioner the video-recorded evidence such that Petitioner was "fully aware of the State's evidence," including the footage from which the still photographs were taken. The court stated that Petitioner refused the plea offers, and it noted Petitioner's hearing testimony on cross-examination that Petitioner "received an offer yet he just did not pay any attention to it." The court further found that counsel made no assurances of simple possession/casual exchange convictions, although counsel hoped for such an outcome. The court stated that counsel did not seek a severance because the two charges involved the same facts and the same witnesses; the court noted that counsel believed a joint trial would not harm Petitioner. The court determined that counsel explained or refuted each complaint raised in the post-conviction petition and that Petitioner failed to prove counsel was deficient. Finally, the court concluded that Petitioner failed to prove prejudice. Petitioner timely appealed.

---

[1] The plea offer form was not exhibited to the hearing.

## Analysis

On appeal, Petitioner asserts that he received ineffective assistance of trial counsel because counsel (1) told Petitioner that he could "beat the charges" and obtain convictions for simple possession/casual exchange of methamphetamine; (2) failed to file a motion to sever; (3) failed to review the entirety of the discovery materials with Petitioner, specifically the laboratory report on the methamphetamine and photographs of Petitioner exchanging money and drugs; and (4) failed to explain the State's plea offer "in its entirety." Petitioner argues that had he seen all of the discovery and the complete plea offer, he would have pleaded guilty. The State responds that Petitioner has failed to prove that counsel was deficient or that he was prejudiced.

### I.

### *Standard of review*

In order to prevail on a petition for post-conviction relief, a petitioner must prove all factual allegations by clear and convincing evidence. *Jaco v. State*, 120 S.W.3d 828, 830 (Tenn. 2003). Post-conviction relief cases often present mixed questions of law and fact. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). Appellate courts are bound by the post-conviction court's factual findings unless the evidence preponderates against such findings. *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015). When reviewing the post-conviction court's factual findings, this court does not reweigh the evidence or substitute its own inferences for those drawn by the post-conviction court. *Id.*; *Fields*, 40 S.W.3d at 456 (citing *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the [post-conviction court]." *Fields*, 40 S.W.3d at 456 (citing *Henley*, 960 S.W.2d at 579); *see also Kendrick*, 454 S.W.3d at 457. The post-conviction court's conclusions of law and application of the law to factual findings are reviewed de novo with no presumption of correctness. *Kendrick*, 454 S.W.3d at 457.

### II.

### *Ineffective assistance of counsel*

The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In order to receive post-conviction relief for ineffective assistance of counsel, a petitioner must prove: (1) that counsel's performance was deficient; and (2) that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984);

*see State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (stating that the same standard for ineffective assistance of counsel applies in both federal and Tennessee cases). Both factors must be proven for the court to grant post-conviction relief. *Strickland*, 466 U.S. at 687; *Henley*, 960 S.W.2d at 580; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Accordingly, if we determine that either factor is not satisfied, there is no need to consider the other factor. *Finch v. State*, 226 S.W.3d 307, 316 (Tenn. 2007) (citing *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004)). Additionally, review of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689; *see also Henley*, 960 S.W.2d at 579. We will not second-guess a reasonable trial strategy, and we will not grant relief based on a sound, yet ultimately unsuccessful, tactical decision. *Granderson v. State*, 197 S.W.3d 782, 790 (Tenn. Crim. App. 2006).

As to the first prong of the *Strickland* analysis, "counsel's performance is effective if the advice given or the services rendered are within the range of competence demanded of attorneys in criminal cases." *Henley*, 960 S.W.2d at 579 (citing *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)); *see also Goad*, 938 S.W.2d at 369. In order to prove that counsel was deficient, the petitioner must demonstrate "that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad*, 938 S.W.2d at 369 (citing *Strickland*, 466 U.S. at 688); *see also Baxter*, 523 S.W.2d at 936.

Even if counsel's performance is deficient, the deficiency must have resulted in prejudice to the defense. *Goad*, 938 S.W.2d at 370. Therefore, under the second prong of the *Strickland* analysis, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (quoting *Strickland*, 466 U.S. at 694) (internal quotation marks omitted).

### a.   Motion to sever

"[E]ffective representation includes a duty for attorneys to 'be prepared, where appropriate' to make pre-trial motions." *Brian Christopher Dunn v. State*, No. M2017-00271-CCA-R3-PC, 2017 WL 5565632, at *8 (Tenn. Crim. App. Nov. 20, 2017) (quoting *Johnson v. United States*, 604 F.3d 1016, 1019 (7th Cir. 2010)), *perm. app. denied* (Tenn. Feb. 14, 2018). To prove prejudice based on trial counsel's failure to file a pretrial motion, a petitioner must show that (1) the pretrial motion would have been granted and (2) that there was a reasonable probability that the outcome of the proceeding would have been different had trial counsel filed the motion. *See Brian Cameron Frelix v. State*, No. M2019-01070-CCA-R3-PC, 2020 WL 5888144, at *10 (Tenn. Crim. App. Oct. 5, 2020) (citing *Vaughn v. State*, 202 S.W.3d 106, 120 (Tenn. 2006), *abrogated on other grounds by Brown*

*v. Jordan*, 563 S.W.3d 196, 202 (Tenn. 2018)), *perm. app. denied* (Tenn. Mar. 2, 2021); *Joshua Iceman v. State*, No. M2018-02202-CCA-R3-PC, 2020 WL 58312, at \*5 (Tenn. Crim. App. Jan. 6, 2020); *Larry Mitchell v. State*, No. W2004-00981-CCA-R3-PC, 2005 WL 957092, at \*2 (Tenn. Crim. App. Apr. 25, 2005), *perm. app. denied* (Tenn. Aug. 22, 2005).

Tennessee Rule of Criminal Procedure 8 provides the following regarding joinder of offenses:

(a) **Mandatory Joinder of Offenses.**

(1) *Criteria for Mandatory Joinder.* Two or more offenses shall be joined in the same indictment, presentment, or information, with each offense stated in a separate count, or the offenses consolidated pursuant to Rule 13, if the offenses are:

(A) based on the same conduct or arise from the same criminal episode;
(B) within the jurisdiction of a single court; and
(C) known to the appropriate prosecuting official at the time of the return of the indictment(s), presentment(s), or information(s).

(2) *Failure to Join Such Offenses.* A defendant shall not be subject to separate trials for multiple offenses falling within Rule 8(a)(1) unless they are severed pursuant to Rule 14.

(b) **Permissive Joinder of Offenses.** Two or more offenses may be joined in the same indictment, presentment, or information, with each offense stated in a separate count, or consolidated pursuant to Rule 13, if:

(1) the offenses constitute parts of a common scheme or plan; or
(2) they are of the same or similar character.

Offenses based upon the same conduct involve "a single act that results in a number of interrelated offenses," such as when a defendant injures two people with the same bullet. *State v. Johnson*, 342 S.W.3d 468, 473-74 (Tenn. 2011) (internal citations omitted). For offenses to be considered as arising from the same criminal episode, the offenses "must occur simultaneously or in close sequence and must occur in the same place or in closely situated places. A break in the action may be sufficient to interrupt the temporal proximity required for a single criminal episode to exist." *Johnson*, 342 S.W.3d at 475 (citing 9 Tennessee Criminal Practice and Procedure § 17:17, at 601). For the mandatory joinder rule to apply to offenses arising from the same criminal episode, the proof of one offense

must be inextricably connected with the proof of the other, or the proof of one offense must form a substantial portion of the proof of the other offense. *See id.*

Offenses joined under Rule 8 may be severed pursuant to Tennessee Rule of Criminal Procedure 14(b), which provides the following:

> (1) *Involving Permissive Joinder of Offenses.* If two or more offenses are joined or consolidated for trial pursuant to Rule 8(b), the defendant has the right to a severance of the offenses unless the offenses are part of a common scheme or plan and the evidence of one would be admissible in the trial of the others.
>
> (2) *Involving Mandatory Joinder of Offenses.* If two or more offenses are joined or consolidated for trial pursuant to Rule 8(a), the court shall grant a severance of offenses in any of the following situations:
>
> (A) Before Trial. Before trial on motion of the state or the defendant when the court finds a severance appropriate to promote a fair determination of the defendant's guilt or innocence of each offense.
>
> (B) During Trial. During trial, with consent of the defendant, when the court finds a severance is necessary to achieve a fair determination of the defendant's guilt or innocence of each offense. The court shall consider whether--in light of the number of offenses charged and the complexity of the evidence--the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense.

In Petitioner's case, the offenses occurred weeks apart in time, and evidence of one drug transaction would not be needed to prove that Petitioner delivered drugs at the other transaction. As a result, the offenses were not based upon the same conduct or arising from the same criminal episode, and Petitioner's charges were not subject to mandatory joinder. However, because Petitioner's charges were of a similar character, they were subject to permissive joinder. As such, Petitioner had the right to severance unless his conduct was part of a common scheme or plan and evidence of the respective transactions would have been admissible in separate trials. *See* Tenn. R. Crim. P. 14(b)(1). However, we need not speculate about the result of a motion to sever because the record supports the post-conviction court's finding that no prejudice resulted from counsel's decision not to seek a severance. Other than generally arguing that the first drug charge was "more prejudicial" than the other due to the State's having a video recording of the transaction, Petitioner has not presented any evidence to indicate that the outcome of his case would have been

different if the charges had been tried separately.  As this court concluded on direct appeal, the evidence at trial was sufficient to support both of the Petitioner's convictions.  *See Robert Glen Gray*, 2020 WL 6127034, at *3-4.  Petitioner has not proven by clear and convincing evidence that he was prejudiced, and he is not entitled to relief on this basis.

### b.  Remaining claims

Relative to Petitioner's claims that trial counsel rendered ineffective assistance when he promised to "beat the charges," failed to review the entirety of the discovery materials, and failed to explain the State's second plea offer, we note that Petitioner's argument consists of a restatement of Petitioner's post-conviction hearing testimony.  The post-conviction court credited trial counsel's testimony that he never promised Petitioner a specific outcome, that he reviewed all of the discovery materials with Petitioner, and that he fully explained to Petitioner the State's two plea offers.  We will not disturb the court's credibility determinations on appeal.  *Fields*, 40 S.W.3d at 456; *see Kendrick*, 454 S.W.3d at 457.  Petitioner has not proven that counsel was deficient, and he is not entitled to relief on this basis.

## Conclusion

Based on the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE